## DORRANCE S. GODDARD *vs.* MONITOR MUTUAL FIRE INSURANCE COMPANY.

An insurance company insured a building against risk of fire, as a machine shop, upon a representation, made without the knowledge or authority of its owner, by a person who applied for the policy in the owner's name, that it was so occupied. It was in fact occupied as an organ factory, without the knowledge or consent of the insurers, but with the knowledge and consent of the owner; and the risk on an organ factory was greater than on a machine shop. The owner accepted the policy, expressed to be on a machine shop, and paid the premium; and the building was destroyed by fire during the term of the policy, and without any change in the nature of the occupation. *Held,* in an action brought to recover for the loss, that the policy was void, for the minds of the parties never met on the subject matter of the contract.

CONTRACT on a policy issued by the defendants under date of October 1, 1869, insuring the plaintiff in the sum of $2500, for one year from that date, against loss or damage by fire, " on his frame two story building, occupied as a machine shop and situated " in Worcester. The policy was expressed upon its face to be " made and accepted upon the following express conditions, viz : that the application for the insurance is a part of the contract ; " " that if the risk shall be increased by any means whatever within the control of the assured, this policy shall be void ; " " and whenever a building hereby insured shall be altered, enlarged or appropriated to any other purposes than those herein mentioned, or the risk otherwise increased, by the act or with the knowledge or consent of the insured, without the consent of the company first obtained in writing, this policy shall be void."

The case was submitted to the judgment of the court on a statement of facts, in which it was agreed that the building was destroyed by fire on March 22, 1870, and due notice of the loss given to the defendants ; but that at the date of the policy, and up to the time of the fire, it was occupied as a manufactory of organs and melodeons, and wood shavings were made on the premises ; that " the risk of the destruction by fire of an organ and melodeon factory is greater than that of a machine shop ; " and that the building was so occupied with the knowledge and consent of the plaintiff, and without the defendants' knowledge or consent, unless it was to be inferred from the following facts:

David Gleason, an insurance broker, solicited the plaintiff to insure the building, and the plaintiff replied that he would not unless he could procure insurance thereon within a certain rate of premium.    Gleason afterwards prepared an application to the defendants, in the plaintiff's name, for insurance on the applicant's "frame two story building" in Worcester, which contained a schedule of questions, and among them the following : " Question 4.  What is manufactured ; and of what material ; are wood shavings made on the premises ? "   This application Gleason took to George J. Mowry, an insurance agent in Worcester, who filled up certain blanks in it, without making any personal examination of the building, from information furnished by Gleason, who had examined it.    Among the blanks filled by Mowry, was the date, " October 1, 1869 ; " the amount of insurance applied for, " $2500 ; " and the answer to Question 4, " Machinery."   Before writing in this answer, Mowry asked Gleason " what was done in the building," and Gleason replied " that it was used as an organ and melodeon factory, but he believed that a small part of it was to be some time used for a machine shop."   Gleason then signed the application, as follows : " Dorrance S. Goddard, applicant, by David Gleason ; " and Mowry wrote his own name upon the back of it, and forwarded it by mail to the defendants, who wrote the policy and sent it by mail to Mowry, without having any other information about the property than what was furnished by the application.    Mowry gave the policy to Gleason, who delivered it to the plaintiff and received from the plaintiff the stipulated premium of $50, out of which he paid $45 to Mowry, and Mowry paid $42.50 to the defendants.

The plaintiff did not see the application ; gave no information from which it was filled up ; and did not know of its existence, except from the reference to it in the policy, until since the commencement of this action.    And the first knowledge he had of the insurance was when Gleason brought the policy to him and he paid the premium.    On March 8, 1870, the plaintiff procured of the defendants, at their office in Boston, an indorsement upon the back of the policy, making it payable, in case of loss, to the Worcester County Institution for Savings, from which he had ob-

tained a loan on the property. He did not at that time, disclose to the defendants the purposes for which the building was used nor was there any circumstance calling or directing the attention of either party to that subject.

" Gleason was accustomed to solicit applications for insurance, from persons owning buildings; and to procure, either directly from the insurance companies, or through the intervention of agents, policies of insurance; and for so doing he received a certain amount of the premium paid by the insured to the company, as a commission for his services. He did not solicit in behalf of any particular company, but effected insurance in such companies as he saw fit, unless the party to be insured indicated a preference. He had no account with the defendants, his name not being on their books at all; and had never written to, or received any letters from them.

" Mowry acted as an insurance agent for several companies; and was authorized by the defendants to receive and transmit applications for insurance to them. He had no power to issue or countersign policies, and did not do so; but the policies were issued at the office of the defendants in Boston, were sent to him by mail, and by him delivered to the persons insured or those from whom he received the application. The premiums paid by the insured were forwarded by Mowry to the company, his commissions being first deducted; and this was the extent of his authority."

*P. E. Aldrich,* for the plaintiff.

*W. G. Colburn,* ( *C. Allen* with him,) for the defendants.

AMES, J. It is a fatal defect in the plaintiff's case that the policy professes to insure a machine shop, and that the building destroyed by fire was not a machine shop. It would be doing great violence to language to contend that a building in which organs and melodeons are manufactured can be correctly described as a machine shop. It appears by the report of the case, that the risk of destruction by fire is greater in the case of a building in which organs and melodeons are manufactured, than in that of one in which machinery is manufactured. The representation therefore was material, and it was untrue. It makes

no difference that the misrepresentation was accidental, unintentional, and without any fraudulent intent, or even that the party insured was ignorant that such a representation had been made. In either case, the ground of objection is the same ; the insurers were misled. They were willing to insure a machine shop, and supposed they were so doing ; but they have never insured the plaintiff's organ factory, which was a different and more hazardous risk. The misrepresentation takes away the foundation of the policy ; and as it was an affirmation of a fact as then existing, it is enough to prevent the policy from taking effect as a contract. The minds of the parties have not met upon the organ factory as the subject matter of insurance. *Kimball* v. *Ætna Insurance Co.* 9 Allen, 540. *Carpenter* v. *American Insurance Co.* 1 Story, 57. *Campbell* v. *New England Insurance Co.* 98 Mass. 381. *Wilbur* v. *Bowditch Insurance Co.* 10 Cush. 446. The plaintiff sues upon the policy, and the court cannot alter the contract as therein expressed. *Tebbetts* v. *Hamilton Insurance Co.* 3 Allen, 569. However unfortunate this may be for the plaintiff, he accepted the policy in its present shape, and cannot complain that he has been misled by it. *Barrett* v. *Union Insurance Co.* 7 Cush. 175.

In this view of the case, the application becomes unimportant, as does also the question whether Gleason was the plaintiff's or the defendants' agent. It is decisive of the case, that the policy, which the plaintiff accepted without objection, or attempt to have any mistake corrected, cannot be applied to the building which was destroyed by the fire. *Judgment for the defendants.*