## Case No. 8,190.

### LEE v. GUARDIAN LIFE INS. CO.

[5 Ins. Law J. 26; 2 Cent. Law J. 495; 5 Bigelow, Ins. Cas. 18.]

Circuit Court, D. California. March, 1875.

LIFE INSURANCE — REPRESENTATIONS IN APPLICATION—WHEN WARRANTIES—WAIVER AND ESTOPPEL—AUTHORITY OF AGENT—DELIVERY AND ACCEPTANCE OF POLICY.

[1. A declaration in the policy that the application is to be considered a part thereof, and that the policy is issued on the faith of the representations, and shall be void if they are untrue, makes the representations a part of the contract, and constitutes them warranties, which, if false in any material respect, render the policy void.]

[2. A waiver or matter of estoppel, to be effectual, must be made by an officer or agent of the company who has authority to make it; and a mere local agent employed to solicit applications has no such power, unless specially authorized.]

[3. The mere making of an application and sending it to the company does not complete the contract, nor is it completed until the policy is delivered to and accepted by the insured; and, if on receiving it he is not satisfied with the conditions therein contained, it is his duty to reject it.]

[4. The fact that an application is signed by the applicant himself is prima facie evidence that the answers therein contained are his answers, and the burden is on the plaintiff to show that the fact was otherwise.]

[This was an action at law by Hannah Lee against the Guardian Life Insurance Company to recover upon a policy issued by defendant upon the life of her husband.]

[1] [SAWYER, Circuit Judge (orally charging jury). Before going into the merits of the case, I wish to give you this caution, gentlemen of the jury: I do not suppose it necessary, but still I deem it advisable, under the circumstances, to give it. You will sit here as an impartial jury,—as impartial arbiters between these parties. You are neither to look with favor or disfavor upon the one or the other. You are to hold the scales of justice even. You are to determine the facts of the case upon the evidence that is before you, and not upon any other evidence, or any other consideration whatever. You are to take that evidence as the witnesses delivered it to you upon the stand, precisely in the way that you believe them to intend to be understood. Counsel, in their zeal, often differ as to what the testimony of witnesses is. In their interested view they are sometimes liable to misapprehend. They are apt to repeat testimony, and give it a different turn, a different construction, from that which was intended; or to echo it back in their own language, and convey a certain idea of their own, when the witness does not mean to convey that precise idea. Anything of that kind you are to disregard. You will reject all those changes and turns and glosses that may be given to the testimony conveying a meaning manifestly not intended by the witness, and take the testimony from the witness own mouth, as you believe he desired it to be understood. There is one other remark that, in view of the course which was taken in the argument, I think I ought to make:] [2]

A great deal has been said of the injustice of insurance companies defending against their policies. Now, gentlemen, I state this to you: That if a fraud has actually been perpetrated upon this defendant, and an uninsurable life has been fraudulently palmed off upon it, and its officers are aware of that fact, it is as much the duty of defendant to itself, to the other policy holders in that company, and to the public, to defend a suit upon such a policy, as it is to pay a loss when the policy has been fairly and properly issued. You must determine all these questions upon their individual merits, and not allow yourself to be swayed or prejudiced by what other companies have done, or by what this company may be said to have done in other cases on other occasions. You are to determine whether or not, in this particular case, there has been a fraud perpetrated, or there are such other circumstances as give the defendant a just defense.

[If you find for defendant, then it is your duty to give it the benefit of that finding; if you find against the defendant, then it is equally your duty to give the benefit of the facts to the other party. You should not allow yourselves to be swayed either the one way or the other, but determine this case upon the evidence, upon its own merits, independent of any other action or other considerations. * * * A good deal has been said about the Case of Wilkinson [30 Iowa, 119]. In my judgment there are elements in this case which are important and material, and which are not found in that case. I shall not point out to you, gentlemen, wherein, because it is not your province to determine the law; but you will take the law as the court gives it to you, whether it be right or wrong, and be governed by it.] [2]

The first inquiry is: What relation has this application to the policy introduced in evidence? That is an important question for consideration. Was it a mere representation made by the party, as an inducement to insure, or does it go further, and does it form an integral part of the contract? Is

---

it one of the elements or stipulations of the contract itself, and a warranty? The authorities are uniform, I think, on that subject and upon the authorities this application is not a mere preliminary representation, but it enters into and forms a part of the contract itself. It is therefore a warranty, and as much an element, a term of the contract, as any provision in it,—as any other term of this contract.

The introduction of the contract is as follows: "In consideration of the representations made to them in the application made for the same, which is hereby made a part of this policy;" and further along it proceeds: "And it is also understood and agreed by the within assured to be the true intent and meaning hereof that, if the representations made in the application for this policy, and upon the faith of which this policy is issued, shall be found in any respect untrue, then, and in such case, this policy shall be null and void."

Now, that makes the truth of the representation in the application, and the application itself, an express stipulation,—an express term of the contract. It is as much a part of the contract as though it were embodied in the policy itself. The fact that there are two instruments does not change the legal relation of the papers. Many contracts are composed of two, or three, or four, different instruments; and although the application is in one instrument, and the policy, so called, in another, they are one entire and indivisible contract, and the affirmance of the truth of the answers is as much a term of the contract as any other. If the answers are false,—if they are substantially false in any matter material to the risk,—then, by the terms of this policy, the contract is void, and the defendant is entitled to a verdict, unless the defendant itself has done something—performed some act—by which it is estopped from availing itself of its provisions.

The provision is one of the terms of the contract. The defendant has never agreed in this policy to insure the applicant upon any other terms than that those representations are true, and the plaintiff has accepted the contract with that term in it. Their minds have fully met upon that one item of the agreement, and not upon any other proposition or terms. As I said before, if any of those representations are substantially false in any particular material to the risk, then, under the terms of this contract, the defendant is entitled to a verdict. That would be its right upon the contract itself. There is only one way, as before remarked, of avoiding this result; that is, by correctly answering in the affirmative the question, has the company done anything by which it has estopped itself from availing itself of this provision of the policy?

There is only one point upon which it is claimed the defendant has estopped itself.

It is not claimed that the defendant itself, or its officers, have done anything to work an estoppel, because they have not been brought in contact either with the plaintiff or the assured. It is claimed, however, that the act of Mr. Wright (in respect to which there is a conflict in the evidence as to what took place) is the act of the defendant; and that the parties are estopped by reason of his action in this, it is claimed; and the testimony on one side—the testimony of Mrs. Lee—is that these questions propounded in the application were never read over to the applicant by Mr. Wright, and were never answered at all by Mr. Lee, the assured.

On the part of Mr. Wright, the testimony is directly to the contrary. His testimony is that he read these questions through, question by question, received to each Lee's answer, wrote it down as given, and after writing it down read the question and answer again before proceeding; and that he thus went through with each and every question in the application to Mr. Lee, who gave the answers now appearing in that paper.

Now, Mrs. Lee testifies that Mr. Wright did not read these over, and that the application was not filled up in the house; that when Mr. Lee was about to look at it Mr. Wright put his hand over it, and said: "You don't want to see that," or something to that effect; "You are to sign here; this is only a matter of form, and your signing it is only a matter of form, to indicate that you desire to be insured."

Now, gentlemen, this is claimed to be a waiver or estoppel against the defendant from asserting or relying upon the clause in question in the contract. I instruct you, gentlemen, that a waiver or matter of estoppel, to be effectual, must be made by an officer or agent of the defendant authorized to make it. If there has been no evidence of any waiver or matter of estoppel of this kind except by a local agent, only employed to solicit applications, there must be additional proof of specific authority given him, or the company will not be bound. Unless Mr. Wright had authority to thus represent to this party, and to prevent him from knowing the answers that were given, and to induce him to sign in ignorance of the answers, even if he did it, it is not binding upon the company, and it is not estopped by that act. [See Ryan v. World Mut. Life Ins. Co., 4 Ins. Law J. 37, 4 Big. Ins. Cas. 627; Goddard v. Monitor Mut. F. Ins. Co., 108 Mass. 56; Lewis v. Phoenix Mut. Life Ins. Co., 39 Conn. 100.[3]

Had Wright such authority? The testimony, and the only testimony on the point, is that he was authorized and employed by Mr. Garniss, the defendant's agent for California, only to solicit applications. He tes-

---

[3] [From 2 Cent. Law J. 495.]

tifies that he (Wright) was instructed to procure answers to those questions; that he was directed to read them over, and obtain the answers to those questions; that he never had any instructions to fill up other than with such answers as were given by the applicant. Mr. Wright testifies, further, that he never did fill up applications with any other than such answers; and Mr. Garniss also testifies to the same thing,—that he gave instructions simply to fill up the applications as indicated by the printed forms, and gave no instructions or authority to fill in any answers except such as were given by the party, and that he never knew of any applications filled up in any other way. There is no testimony, direct or inferential, that goes beyond this, unless it is to be inferred, by rule of law, that his powers resulted from the very fact that he was authorized and empowered to solicit these applications from parties desiring to be insured. There is further testimony to the contrary; because the very application itself, upon its face, indicates that the solicitor had no such authority. I instruct you, gentlemen, from that fact alone, that there is no presumption of law arising that he has authority to do the act which it is claimed he did in this instance. To do that, unless he had express authority beyond the mere right to solicit, would be assuming or presuming that he had authority to perpetrate a gross and palpable fraud upon his employer and in the interest of the assured. No such presumption of law arises from the facts in this case, and there is no direct testimony to show that his authority extended beyond the point I have mentioned.

As I was about to say, the very application with which Wright was furnished—the blanks to be used indicated his duties and his authority, with its limitations, what he was to do and all he was to do. There are the questions, printed in form, to be answered by the applicant, and to be answered by the party on whose behalf the insurance is made,—not by the solicitor,—and on that very blank application are these questions: "Have you read the answers given to the questions pages 1 and 2 of this application, and do you believe them to be correct?" "Are you aware that any untrue or fraudulent answers to the queries contained in this application, or any suppression of facts in regard to his (or her) health, habits, or circumstances, or neglect to pay the premium on or before the day it becomes due, will vitiate the policy, and forfeit all payments thereon, except as specified and agreed in the company's policy?" "Do you understand that agents of the company are authorized to receive payments when due, upon the receipt of an authorized officer of the company, but not to make, alter, or discharge contracts, or waive forfeitures?" Now, if Wright was authorized to make these declarations testified to by Mrs. Lee, and to procure, or himself insert and return, false answers, that would be an authority to change, by way of estoppel,—to waive,—the terms of the contract which the defendant itself had prescribed, and that very thing is expressly forbidden in the application which is presented, and under which he is at the very moment acting. But, gentlemen, the rights of the party are not ended or concluded with the making out of the application. When the application is made out and forwarded to the company, it is not yet a contract of insurance. It is only then that it has attained to the position of a proposal on one side, not accepted by the other. There is no contract of insurance until the policy itself is delivered and accepted. If such a representation were made by the solicitor at the time, afterwards, when this contract was delivered; the contract (under which the plaintiff claims, and which she has in her possession ever since) informs the party that the agent had no authority to make any such statement or procure the application in any such manner. It expressly brings it to the attention of the applicant that the contract is made upon the consideration that the representations made in the application for the same are made a part of the contract; and it further provides, as I have already read, that "it is also understood and agreed by the within assured to be the true intent and meaning hereof that if the representations made in the application for this policy, and upon the faith of which this policy is issued, shall be found in any respect untrue, then and in such case this policy shall be null and void."

When this contract is tendered to him, there is brought to the applicant's attention, directly from the defendant itself, from the officers of the company, in the very contract, the statement in express terms, that if those answers are false the contract is void; and it calls his attention to that fact, which would negative any idea of authority to the solicitor to make these representations in fraud of the rights of the company. Again it says, in the margin: "The agents of the company are authorized to receive premiums, when due, upon receipt of an authorized officer of the company, but not to make, alter, or discharge contracts, or waive forfeitures." Thus, in every paper where the defendant itself acts, it takes particular pains to bring this limitation of authority to the notice of parties dealing with it, and when this policy was delivered, if the party insured was unwilling to accept those terms, he should have rejected it; and it was not a contract until it was delivered, and until he received and accepted it, and the policy itself brought again to his attention the fact that there was no such authority to waive, expressly or by matter of estoppel, any right under the provisions of the policy in question.

This duplicate receipt in evidence, if it be the receipt that was given by Wright on the

payment of the first $20 (and whether it is or not is a question for you to determine), also carries out that idea, that the contract is not a contract until accepted by the defendant. One of the provisions of it is: "If declined, the above amount will be returned on the surrender of this receipt; if the policy be not accepted by the party when issued, the above sum shall be forfeited to the company." It goes upon the theory that Lee might decline to take the policy, although he made the proposition, and then provides that since he has made the proposition, and put the company to the trouble and expense of examination, the sum shall be, if he then rejects the policy, forfeited to the company. But whether they acted upon that idea or not, that is the correct legal position of the parties.

In all this evidence there is no evidence that this agent had specific authority to commit this fraud upon the company. All the affirmative evidence in the case goes to show that he had no such authority. I instruct you, therefore, that there is no evidence which will justify you, in this case, in finding that Mr. Wright had authority from this defendant to perform these acts which they claim to be matter of estoppel. If you were to find against this view from the testimony in this case, I should be compelled to set aside the verdict. I instruct you that there is no evidence to show that specific authority. The evidence is all the other way, and there is no conflict in it whatever; and the authority does not result, as a presumption of law, from the mere fact that Wright was furnished with those blank applications, and with authority to fill or have them filled up with the answers given by the parties desiring to be insured as the applications indicate. Then, gentlemen, this policy, as it is written, is the contract by which these parties must be bound and their rights determined.

I will say, further, with reference to this point, that if Mr. Wright performed the acts which it is claimed he did perform, and in the way stated by Mrs. Lee, it was a fraud upon the defendant,—a fraud practiced in the interest, necessarily, of the applicant or the assured, and not in the interest of the defendant; for it is not in the interest of the insurance company to insure an uninsurable life. If the company cannot protect itself by its contracts and other means adopted, it will be at the mercy of any of the multitude of persons it necessarily employs, who choose to practice these frauds upon it.

Besides, this kind of fraud could not be well practiced upon the insurance company except by either the co-operation of the applicant,—and, in case of such action and co-operation, of course the policy would be void for fraud on his part,—or else through his becoming by gross negligence the passive and culpable instrument of the party perpetrating the act. He is in fault because it is a piece of gross negligence on his part to sign a document of that kind without knowing its contents, and to accept a policy containing these specific provisions, referring back to the application, without considering the effect it would have upon his rights. And such negligence necessarily contributes to the accomplishment of the fraud.

I instruct you, gentlemen of the jury, that this contract is the measure of the rights of these parties; that this clause is binding; and that, if there are any false statements or misrepresentations in any of those answers,—any statement substantially false material to the risk assumed,—then you must find for the defendant. If they were all true,—substantially true,—then you must find for the plaintiff.

4 [This brings us to the question whether there was anything false in these representations. It is claimed on the part of the defendant that these are false in several particulars. One question is, "Have you had any of the following diseases," among others, "spitting of blood," "rheumatism," "palpitation of the heart," "or disease of any vital part"? The answer is, "No." "Are you subject to cough or shortness of breath"? The answer is, "No." "Have you ever had any serious illness or personal injury"? The answer is, "Broken leg when about 13 years old." You have heard the testimony on this subject. * * * Gentlemen, in addition to your general verdict, I have concluded to submit to you four interrogations, upon which you are directed to find specially, and my further remarks will have reference to these special findings. I will read them now. Question. Did Mr. Wright, the defendant's solicitor of applications, write the answers in the application, in accordance with the answers to the questions therein propounded, and information given to him for that purpose by Andrew Lee? Question. Did Mr. Wright induce Andrew Lee, while ignorant of the contents, to sign the application, by saying that it was only a form to make known his desire to insure, and did he so sign? Question. Did Andrew Lee, at the time he signed the application, or at any time before the delivery and acceptance of the policy, know what answers were inserted in the application to the questions therein propounded? If not, did he have an opportunity to know? Question. Did Andrew Lee take the application with him to Vallejo, and return it or cause it to be returned, by mail, express, or otherwise, to the defendant's office at San Francisco, with the certificate purporting to be made by Dr. McPhee appended. Gentlemen, these are all questions of fact, and on these questions there is a conflict of testimony; it is for you to determine from that testimony which is right and which is wrong. I will call your attention, as I deem it my duty to do, to some of

---

4 [From 2 Cent. Law J. 495.]

the salient points of that testimony, and explain to you what the tendency is, and leave it to you to say what it proves, as it is your province alone to determine the weight to be given to it, and the facts it establishes. * * * If there are any contradictions between the testimony given by any of these witnesses on former trials,—substantial differences,—and the testimony on this trial, you are entitled to consider that also. I mean by "substantial differences," differences in the main important facts of the case. They may differ in the form of the statement. They may differ in recollection as to the precise time and the precise minute, circumstances on different trials, but upon the great and essential facts in issue, can they differ without throwing suspicion upon the testimony? If you find any differences other than mere formal ones, differences in their testimony upon the main essential facts, that is for you to consider in determining the credibility to be given to the respective witnesses; and if you find any one witness who has willfully, knowingly testified to a falsehood in any one particular, you are justified in rejecting his testimony in all other particulars. Then as to the manner of the witnesses on the stand,—their relation to the subject-matter. All these circumstances, taken in connection with the intrinsic probabilities of the case as developed by the evidence, are matters for you to consider in determining which is right and which is wrong; and what, if any, weight shall be given to any of the circumstances. It is my duty to point out the salient points of the testimony, and call your attention to them, so that you may reflect upon them in a proper manner, and then leave you to determine the facts upon the testimony. You will answer these specific interrogatories by determining which of these parts is correct on these various points. To recapitulate: If you find that there is a substantial falsehood in the answers to these questions, in the application which I have mentioned, in a matter material to the risk, you must find a general verdict for the defendant. If you find these are all substantially true, then you must find for the plaintiff. The other questions you must answer according as the testimony satisfies your minds.]4

On the question of what took place on the making out of this application, I will say to you further, gentlemen of the jury, that the application itself appears to be signed by Mr. Lee and Mr. Moore, and, of itself, that is prima facie indication and evidence that those answers are their answers, and that, if the other side rely upon overthrowing that, the burden is upon them to prove the issue affirmatively, by testimony satisfactory to your minds, and you are to be governed by the preponderance of evidence. When I say, "preponderance of evidence," I

do not mean preponderance in amount; I mean its weight, taken in connection with the intrinsic probabilities,—the natural course of things under the circumstances. There may be half a dozen witnesses upon one side and one upon the other, and yet there might be cases where the jury would be justified in disregarding, under the circumstances, the testimony of all but one. Whether they should or not is a question for them to determine. You will be governed, not by the quantity, but by the quality and weight, of the evidence in considering the credibility to be given the various witnesses, and the probabilities in connection with all the circumstances. [I will only add, gentlemen of the jury, that if you find for the plaintiff, your verdict will be for the sum of $5,000, with interest at 7 per cent. from September 26, 1870.]5

General verdict for defendant. The jury disagreed on all the special issues, except that upon the third they found that Lee had no opportunity to know the contents of the application.