MERCER COUNTY CIRCUIT COURT.

SAMUEL K. DENNIS, PLAINTIFF, v. THERMOID COMPANY, A DELAWARE CORPORATION, AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT.

Decided October 18, 1941.

For the plaintiff, *Homan, Buchanan & Smith.*

For the defendant, *Ellis L. Pierson.*

OLIPHANT, C. C. J.   The above matter was heard by the court without a jury pursuant to a stipulation entered into between the parties.

During the year 1936 and for at least eight years prior thereto the plaintiff, Dennis, was employed by the defendant company as division manager of its Southwestern Branch with headquarters at Dallas, Texas, where he had a home and was settled with his family.  In October of that year, after some previous negotiations, he came to Trenton at the request of Frederick E. Schluter, the president of the defendant company, for which he had the power and authority to act, to confer concerning his taking the position of director

of replacement sales. This would necessitate his moving to Trenton, which he was reluctant to do.

Further negotiations took place and the final meeting between Dennis and Schluter occurred the latter part of October. At that time a memorandum of the terms agreed upon was made out and initialed by Mr. Schluter. Dennis wanted a salary of $7,500 a year, which figure appears on the memorandum, which Schluter would not pay and it was finally agreed that he should receive $500 per month beginning November 1st, 1936, which was to be raised to $625 per month beginning July 1st, 1937. In addition, he was to be paid his company expenses and the moving expenses of himself and family from Dallas to Trenton. He was further to receive "1% of all increased sales of the replacement division from October 31st, 1936, over same periods previous year" plus "a participating share in any management bonus." As to this last item the sum of $1,500 was guaranteed. All of the foregoing appears on the memorandum.

As to the "management bonus" item I am of the opinion that the agreement between the parties contemplated that the guarantee of $1,500 applied only to the year 1937, that thereafter Dennis would share therein if there was any such bonus given by the Company. He was paid none for the year 1938 and thereafter never demanded same until the filing of the instant suit. There is no proof that there was any such bonus declared by the Company after the year 1937 or paid to others.

It was the practice of the company to figure increases and losses on sales on a yearly basis and likewise the practice to pay any bonuses shortly after the first of the year for the previous year's work.

I am convinced from the documentary and testamentary evidence the contract made between Dennis and Schluter on behalf of the Company was a yearly hiring of the plaintiff by the defendant beginning January 1st, 1937. I come to that conclusion largely by reason of the provision in the memorandum providing for a percentage on increased sales and a yearly bonus. *Jones* v. *Manhattan Co.*, 91 *N. J. L.* 592; *Lyons* v. *Pease Piano Co.*, 92 *Id.* 592. Also in *Pfiel* v. *Christian*

*Feigenspan, Inc.,* 97 *Id.* 3, the court said: "It is of some significance that the defendant proposed to, and in fact did, pay for the transportation of plaintiff's household effects from Cleveland, Ohio, a circumstance looking toward some degree of permanency in the employment."

It is conceded that the memorandum of October, 1936, did not meet the requirements of the statute of frauds, and ·if suit was brought on· that instrument it would fail unless based on a *quantum meruit. McElroy* v.·.*Ludlum,* 32 *N. J. Eq.* 828 (at *p.* 833), citing *Smith* v. *Smith's Adm'rs,* 28 *N. J. L.* 208. Where there is a hiring at a specified rate per year the English rule is followed in this state and that hiring is for a definite term, from year to year. The Court of Errors and Appeals in *Willis* v. *Wyllys Corp.,* 98 *Id.* 180, says: "There is great diversity of view in the different jurisdictions respecting this class of cases. The 'English view' so called, tends to a construction establishing a contract for a definite term if this can be spelled out of the language used. The 'American view,' favored by most of the states, tends toward a holding that the hiring is at will unless the contrary be fairly plain. 26 *Cyc.* 973, *et seq.; Willis Con.,* ¶ 39. Our own cases seem to favor the English view. * * *" This case has been followed in two recent decisions, one by the Court of Errors and Appeals in *Donnellan* v. *Halsey,* 114 *N. J. L.* 175, and the other by the Supreme Court in *Essbee Amusement Corp.* v. *Greenhaus,* 114 *Id.* 492.

New York cases have been cited by both sides in their briefs with reference to several questions presented here. They are not pertinent as that jurisdiction follows the American rule. ·

In the instant case Dennis continued at his employment at the same rate of pay during the years 1937 and 1938 and began the year 1939 under the same conditions. He was discharged on April 7th, 1939, without justifiable cause.

This suit is based upon the contract arising by operation of law by reason of the relationship of the parties continuing from year to year. In *Passino* v. *Brady Brass Co.,* 83 *N. J. L.* 419, the court said: "The existence of a continuing contract of service from year to year, or from one definite period

to another, may be implied from proved facts and circumstances, and the course of business between the parties, and is always a question of the intent of the parties." The following is found in *Morris* v. *Briggs Co.*, 179 *S. W. Rep.* 783 (at *p.* 785): "The affect of the continuation of the employment after the termination of the definite period, without any new agreement, was to raise the presumption of a renewal of the contract for the following year—when one serves another under a contract for a year's service, and holds over, continuing in the service after the expiration of the year, there is a presumption, analogous to the presumption in the case of a yearly lease, that the parties consent to the continuance through another year of the contract of service."

In *Williston on Contracts* 155, ¶ 90, it is stated "Where a contract of employment for a definite time is made, and the employee's services are continued after the expiration of the time, without objection, the inference is that the parties have assented to another contract for a term of the same length with the same salary and conditions of service, following the analogy of a similar rule in regard to leases."

*L. R. A.* 1918C, *p.* 706, states the general rule to be as follows: "The great weight of authority is to the effect that an employee originally hired for a definite term who continues to render the same services after the expiration of such term without explicitly entering into a new agreement is *prima facie* presumed or deemed to be serving under a new contract having the same terms and conditions as the original one, the continuance in the employment of the hirer with the consent of the latter after the time specified in the contract being equivalent to a new hiring for the same length of time, on the same terms."

In this situation the original negotiations between the parties and the memorandum are competent evidence to show the terms of the contract under which the parties continued their relations and the statute of frauds is no bar to the action. *Tatterson* v. *Suffolk Manufacturing Co.*, 108 *Mass.* 56.

That statute and the denial of any contract of hiring for a definite period were the defenses relied upon by the defendant.

Again in *Williston on Contracts* (1st ed.) 985, ¶ 503 (Vol. 2, p. 1465, ¶ 503, Revised Ed. 1936), it is stated, "If after a contract for yearly hiring, at the close of one year's service the employer and employee continue to perform as before, so that by implication a contract of service for another year arises, the statute is inapplicable."

In the Tatterson case, *supra,* the court said: "The fifth prayer relates to the statute of frauds. The position of the defendants would be correct, if the plaintiff relied upon the original negotiations as the contract upon which his action was founded. The written evidence does not show any contract which binds the defendants to employ the plaintiff for the whole of a second year. That obligation, if it exists, must be found in some agreement into which the parties had entered within the year. They did enter into some agreement, by the mere fact of continuing their relations of employment and service. It was a relation of contract. The terms of the contract, in the absence of express words, are to be ascertained, not alone by what occurred within the year, but also from all that had transpired previously. From all the evidence the jury must determine, as an inference of fact, what was the understanding with which the parties entered upon the second year of employment and service. That, when found, constitutes their contract. The contract which resulted from the original negotiations did not by its terms, and could not by reason of the statute, extend into the second year. But those negotiations were competent evidence from which to infer what were the terms of the new contract under which the parties continued their relations. We think that the jury were rightly instructed that the statute of frauds did not apply to the contract upon which the plaintiff relied; and that the fifth prayer was rightly refused."

In *Sines* v. *Superintendents of the Poor,* 58 *Mich.* 503, the plaintiff was first employed as a clerk on February 1st, 1875, and in August, 1877, was employed as keeper of the poorhouse. His employment commenced in October. He was continued in the employ of the defendant until February 1st, 1883, when he was discharged. He sued for his salary from February to October, 1883. The defendants set up the

statute of frauds, as a defense, but this defense was disallowed, the court (at *p.* 506), saying: "It is urged by defendants that the contract claimed by the plaintiff is void by reason of the statute of frauds; that the talk with the president in September, to continue work until he had laid the matter before the board, was a contract not to be performed within a year. But this is an erroneous view of the testimony. The contract had been previously made for a year's service, and under the contract defendant had gone on from year to year, and in such cases, if nothing is said or done by either party at the end of the year to terminate it, but on the contrary, the person performing service is allowed to continue on without objection, the facts raise the presumption from which the jury has found that both parties have assented to the contract continuing in force for another year."

The contract sued upon here covers the period from January 1st, 1939, to December 31st, 1939, and was created by operation of law. That period is within a year and the statute of frauds has no application. As was said in *Passino* v. *Brady Brass Co., supra,* "We deem the contract under consideration therefor to be one which by its terms was to be performed within a year."

Counsel for the defendant argues that the statute applies because while the contract on the part of the plaintiff would be completely performed within the year, only a part thereof would be performed on the part of the defendant; the monthly payments on account of salary would have been made, but the amount due on any increase of sales could not be ascertained and paid within the year neither would the management bonus be paid until after the year had gone by. In support of this contention the cases of *McElroy* v. *Ludlum, supra,* and *Barnes* v. *P. & D. Manufacturing Co.,* 123 *N. J. L.* 246, are cited. They are not in point. In *Berry* v. *Doremus,* 30 *Id.* 399, it was stated that the statute of frauds "only applies where neither side is to perform the contract within one year," and this pronouncement was followed in *Boyce* v. *Miller,* 15 *N. J. Mis. R.* 280; 190 *Atl. Rep.* 845, where the court said: "Contracts not to be performed within

one year may be taken out of the statute through an entire performance by one of the parties thereto."

It is also contended for the defendant that a statement by the attorney for the plaintiff during the trial of the case was dispositive of the issue and brought the contract squarely within the interdiction of the statute. 13 *N. J. Mis. R.* 832; 181 *Atl. Rep.* 638. Counsel said: "We have a suit which is on a contract made in 1936. We allege the contract continued until the discharge of this man. The answer is a denial of that." That is a true statement too succinctly stated. This suit is in effect one arising by operation of law out of the contract made in 1936. The decision in the Labett case would not control.

The court finds that the statements contained in the complaint are supported by the evidence except as to subdivision (e) of paragraph 9.

The court finds for the plaintiff and against the defendant. The damages of the plaintiff are assessed at $5,821.73 with interest on the respective items amounting to $643.51, or a total of $6,465.24.