Marcello to use *v.* Concordia Fire Insurance Company. Marcello *v.* Williamsburg City Fire Insurance Company. Marcello *v.* Western Insurance Company. Marcello *v.* Rochester German Fire Insurance Company. Marcello *v.* Westchester Fire Insurance Company, Appellants.

*Insurance—Fire insurance—Change of ownership or possession—Receiver in bankruptcy.*

Where a policy of fire insurance provides that the policy shall be void "if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment, or by voluntary act of the insured, or otherwise," the policy is not rendered void by the fact that a receiver in involuntary bankruptcy of the assured takes custody of the premises, places a watchman in charge of them, takes out insurance in his own name, and advertises the personal property for sale, the insured being permitted to continue his residence in a dwelling on the property.

Argued Oct. 17, 1911. Appeals, Nos. 76, 78, 79, 80 and 81, Oct. T., 1911, by defendant, from judgment of C. P. No. 4, Allegheny Co., Fourth Term, 1909, Nos. 773, 774, 775, 776, 778, for plaintiff on case stated in suits of Vitti Marcello, now for use of South Side Trust Company, Trustee in Bankruptcy for said Marcello, v. Concordia

Fire Insurance Company, Williamsburg City Fire Insurance Company, Western Insurance Company, Rochester German Fire Insurance Company and Westchester Fire Insurance Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Case stated to determine liability on policies of fire insurance.

CARNAHAN, J., filed the following opinion:

The plaintiff, Marcello, was the owner in 1908 of a lot of ground near Bridgeville, Allegheny county, having thereon a two-story frame, slate-roof building, occupied by him as a storeroom and dwelling, and a three-story frame, slate-roof building, with addition, also occupied as a storeroom and dwelling. On June 2, 1908, the defendant company, in consideration of a premium paid, issued to him its policy of fire insurance for $1,500 on the three-story building "while occupied as a private dwelling house and storeroom," and on August 29, 1908, the same company, in consideration of a premium paid, issued to him its policy of fire insurance for $1,000 on the two-story building "while occupied as a grocery and dwelling house."

Each of these policies was for a period of one year from its date, and in each other insurance was permitted.

The buildings were destroyed by fire on December 25, 1908. Proofs of loss were duly furnished, payment was refused, and an action of assumpsit was brought to recover on the policies. An affidavit of defense was filed, and a rule was taken for judgment for want of a sufficient defense, which rule was duly heard and discharged.

The parties now submit a case stated.

Each of the policies provided (inter alia) that it should be null and void, and of no effect, "if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of any property covered by this insurance by virtue of any mortgage or trust deed; or if any

change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process, or judgment, or by voluntary act of the insured, or otherwise, or if this policy be assigned before a loss, or if illuminating gas or vapor be generated in the described building (or adjacent thereto) for use therein."

No waiver or modification of any of the above provisions and conditions was ever made.

On December 9, 1908, an involuntary petition in bankruptcy was filed by creditors of Marcello against him in the United States court for the western district of Pennsylvania. On December 12, 1908, Marcello, in writing, waived service of a subpœna in bankruptcy. On December 17, 1908, a petition for the appointment of a receiver of the property of Marcello was filed, and as respects said petition, there was a second written waiver by Marcello of the service of a subpœna or notice upon him. On December 17, 1908, the South Side Trust Company was appointed "Receiver of all the assets and property, of every kind and character, belonging to said bankrupt." On December 18, 1908, the receiver gave bond, which was duly approved and filed on the same day, and thereupon, December 18, 1908, the receiver took possession of the property covered by these two policies of insurance, and placed a watchman upon it. On December 19, 1908, the receiver took out policies of fire insurance issued by various companies, to the amount of $9,000, upon the same property covered by these two policies. Marcello, before the filing of the petition in bankruptcy, had, in addition to the two policies in suit, taken out other policies of several companies on said property, his entire insurance on the same being $9,000. On December 21, 23 and 24, 1908, the receiver advertised the personal property of Marcello for sale on December 31, 1908. On December 25, 1908, the buildings and their contents were destroyed by fire. The receiver's watchman was on the

property at the time of the fire, and Marcello was living in one of the dwellings, not having been dispossessed by the receiver. Marcello's policies, including the two in suit, had not been canceled.

On December 29, 1908, Marcello was adjudged a bankrupt. No notice of the bankruptcy proceedings, nor of the appointment of a receiver, was given to the defendant company, nor did it ever consent to the "changed conditions," as set forth in the case stated.

The sole question in the case is whether there was such a change in the interest, title or possession of the subject of insurance as to terminate the policies. It does not appear among the facts submitted, and expressly agreed to, that the change was "a change of occupants without increase of hazard," or otherwise; nor does it appear that the receiver had no such title as to enable it to take out new policies of insurance; nor that it was not empowered to sell and dispose of the personal property, as it had announced its intention by advertisement to do.

The bankruptcy act of 1898 authorizes the appointment "of receivers, or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary for the preservation of estates to take charge of the property of bankrupts, after the filing of the petition, and until it is dismissed, or the trustee is qualified."

The title to the property of the alleged bankrupt remains in him until adjudication; subject to the control of the court, to be exercised either by a receiver, or the marshal, if otherwise the interests of the creditors are not sufficiently protected: In re La Plume Condensed Milk Co., 145 Fed. Repr. 1013.

The duty required, and the power conferred, clearly are that the receiver, or the marshal, should take possession of property that would otherwise go to waste, and hold it and preserve it, so that it might come to the trustee, when selected, without needless injury: Boonville Nat. Bank v. Blakey, 107 Fed. Repr. 891.

As a general rule, no order of sale should be made until

after adjudication, unless the property is of such a nature that a sale is necessary to preserve its value: In re Kelly Dry Goods Co., 102 Fed. Repr. 747; In re Garner & Co., 153 Fed. Repr. 914; In re Harris, 155 Fed. Repr. 216.

A receiver in bankruptcy is a mere custodian, and has no title to the property of the bankrupt: 2 Foster, Fed. Practice (4th ed.), 1815.

" In general, the receiver in a bankrupt proceeding is a caretaker and custodian of the property of the bankrupt, and is not a trustee for the creditors. . . . In an involuntary proceeding, the duty of the receiver, who conducts the business of the bankrupt, is to maintain as far as possible the continuity of his affairs, so that, if no adjudication is made, his property and business may be returned to him with the least possible damage:" Alderson on Receivers, 361.

From the above recited authorities, it appears that, while the receiver might be justified in advertising for sale and selling the personal property, and doubtless would be, if so authorized and directed by order of the court, it would have no authority to sell the real estate; and that as respects title to the real estate, it was in the bankrupt at the time of the destruction of the buildings by fire, and until adjudication. Whether or not the receiver had such insurable interest in the buildings, as to enable it to take out new policies of insurance on them as it did, is not a question which calls for decision in this case.

Had the fire occurred after the adjudication of Marcello as a bankrupt, and especially after the appointment of a trustee for the benefit of creditors, qualification of the trustee, and that taking of actual possession by the trustee, the question here presented could not have arisen. But under the circumstances, it cannot be said that it is one which involves mere technicality. It comes naturally from the contracts of insurance and the facts agreed upon, and the insurance company is entitled. to have it fully considered, and passed upon by the courts.

The receiver did take possession of the premises. It placed a watchman upon them. The watchman was there, in personal charge of the property—both real estate and personalty—at the time of the fire. The receiver did not lease them to a tenant; it did not dispossess the bankrupt, who was living upon them. He was allowed to remain, and he was there at the time of the fire. As a further act of possession, it reinsured the property in its own name for creditors; and as a further act of possession, it advertised the personal property for sale. Its possession was complete in the sense that it had absolute charge of the property, and actually occupied it without notice to, or knowledge of, this defendant.

The safety of the insurer is dependent much upon the character of the assured, not alone upon his integrity and good faith, but upon his habits of carefulness, of prudence, and vigilance. It is obvious that the danger of fire may be much less when the assured is a man watchful and provident than where he is heedless and negligent, as well as dishonest. The provision, therefore, which requires assignment of a policy to be made with the consent of the insurers, and to be approved by them, is not unmeaning. Nor is its purpose to stipulate for a new contract with the assignee. It is designed rather to afford substantial protection to the underwriters, by enabling them to preserve, during the continuance of the risk, the safeguards which existed at its origin; those found in the honesty and watchfulness of the assured. It was for this reason that it was early laid down that a fire policy could not be assigned pending the risk, so as to give to the assignee any interest in it whatsoever, either legal or equitable: Lord Chancellor King, Lynch v. Dalzell, 4 Bro. P. C. 431. Such a policy has indeed in some of the later cases been held assignable in equity, with the subject itself, when it contained no provision to the contrary, and it is on that account that the prohibition to assign has been generally introduced: State Mutual Fire Insurance Co. v. Roberts, 31 Pa. 438.

It was not contemplated by the parties to the contracts that mere change of occupancy should vitiate them, because change "in the interest, title or possession" is expected in case of "death of an insured," and likewise, "change of occupants without increase of hazard." The word "possession," as used in the policies, seems to have a broader significance than any that could be gathered from the words "occupant," "occupancy," or "occupation." Such is the view taken by the Superior Court in a case involving the consideration of a policy of insurance, which contained this provision: "This entire policy . . . . shall be void . . . . if any change, other than by the death of the insured, takes place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process, or judgment, or by voluntary act of the insured, or otherwise." The court says (inter alia): "We are not aware that the precise question here involved has been decided in this state. But there is a decision in Rumsey v. Phœnix Insurance Co., 1 Fed. Repr. 396, by the United States circuit court of appeals for the northern district of New York, opinion by Judge WALLACE, which seems to decide this question. In that case the policy provided that it should be void 'if the property be sold or transferred, or any change take place in the title or possession, whether by legal process, judicial decree, voluntary transfer, or conveyance.' The court said in that case, 'The fact that Zimmer moved out of the dwelling house, and let it to tenants, is not a defense within the conditions that avoid the policy if any change takes place in title or possession. The change of possession contemplated is something more than a change of occupation; it is a change effected by legal process, judicial decree, voluntary transfer, or conveyance; one which refers to his possessory right, and not to the occupancy of the insured. The possession of Zimmer's tenants was his possession within the meaning of the policy.'

'In our opinion the proper legal, as well as reasonable,

construction of the word 'possession,' as used in the policy in the present case, limits it to legal possession, or possessory right. . . .

" 'Where the terms of a policy are susceptible, without violence, of two interpretations, that construction which is most favorable to the insured, in order to indemnify him against loss sustained, should be adopted:' Humphreys v. National Benefit Assn., 139 Pa. 264.

"In the present policy the word 'occupant' seems to be used to indicate actual possession or occupancy, and the word 'possession,' as used with the words 'interest' and 'title' in the clause in question, seems to mean legal possession, or possessory right, and, in accordance with the doctrine above quoted, these words should be so construed as to indemnify the insured against the loss sustained. . . . We do not find that there was any change in the possession except the physical occupancy of the premises, which is not forbidden by the term of the policy of insurance:" McGinnis v. St. Paul Fire & Marine Insurance Co., 38 Pa. Superior Ct. 390.

We regard the above quoted authority as decisive of the question now submitted; and therefore, the receiver having no possessory right, but being merely a caretaker, pending adjudication in bankruptcy, the plaintiff is entitled to judgment. The bankruptcy proceeding was involuntary on his part, and it is not material that he had knowledge of it, or that he waived the service of notices connected with its progress.

The decision here reached can hardly be said to work a hardship upon the defendant company. It is not deprived of any right or privileges contemplated at the time the policies were issued. It is not claimed that the hazard was increased. On the contrary, it seems to have been lessened, or at least the tendency was to lessen it. The occupancy of the insured was not disturbed, and both he and the receiver's watchman were on the premises at the time of the fire. What was said in this respect in Fuller v. New York Fire Insurance Co., 184 Mass. 12 (67 N. E.

Repr. 879), namely: "The rights and obligations of the receiver tend to add to, and not diminish the care and oversight of the insured property, and could in no way increase the risk, or alter it to the detriment of the insurer," is quite applicable here, although in that case the assured had been adjudged a bankrupt and a receiver, who had been designated, had not qualified, nor had he taken actual possession. Later he did qualify, and still later, a trustee was appointed.

In further support of the views here entertained are the cases of Fuller v. New York Fire Insurance Co., 184 Mass. 12, and Fuller v. Jameson, 98 N. Y. App. Div. 53 (90 N. Y. Supp. 456). As against them, the defendant cites, and confidently relies upon, a case entitled, In re Hamilton et al., decided by the United States district court in Arkansas, and reported in 102 Fed. Repr. 683. The policy of insurance there considered contained provisions respecting a change in the "interest, title or possession" of the subject of insurance, similar to the provisions of these policies; and in the opinion of the court are certain dicta in which are expressed substantially the view taken by defendant here; namely, that possession of the receiver before adjudication in bankruptcy was such a change of possession as brought about a cancellation of the policy. But the policy, which was a renewal, was assigned by the assured to the receiver, with the written consent of the insurance company, and the question before the court was, whether a bank, which had received the original policy as a pledge for the payment of a debt by the assured, was entitled to claim the renewal as a continuation of the pledge under the terms of the original agreement with the assured. The point decided was that "the assignment of the policy to the receiver, with the consent of the company, operated as a new and substantive contract by which the rights of the bank, as pledgee, were terminated."

We do not regard this case as an authority upon the question presented here, but if we are mistaken in this re-

spect, it need only be said that the decisions of our own state are binding upon us.

*Error assigned* among others was the judgment of the court.

*William A. Jordan*, with him *W. S. Maxey*, for appellant.—The receivership surely places a cloud upon the title to the property in the case of which the plaintiff, Marcello, could not have sold his property, and under those conditions the ownership was not sole and unconditional. His ownership and interest in it was changed by virtue of the interest which the receiver had when he assumed and actually took possession of the property: In re Hamilton, 102 Fed. Repr. 683; Bronson v. New York Fire Ins. Co., 63 S. E. Repr. 283; New Kensington Lumber Co. v. Ins. Co., 35 Pa. Superior Ct. 32; State Mut. Fire Ins. v. Roberts, 31 Pa. 438; McGinnis v. Ins. Co., 38 Pa. Superior Ct. 390; Starkweather v. Cleveland Ins. Co., 22 Fed. Cases, 1093, Case No. 13,309; In re Dean, 7 Fed. Cases, 291, Case No. 3,700; Adams v. Rockingham Mut. Fire Ins. Co., 29 Maine, 292; Perry v. Ins. Co., 61 N. Y. 214; Com. Ins. Co. v. Berger, 42 Pa. 285; Ins. Co. v. O'Maley, 82 Pa. 400; Grandin v. Ins. Co., 107 Pa. 26.

*E. Y. Breck*, for appellee.—There was no change of ownership or possession: In re La Plume Condensed Milk Co., 145 Fed. Repr. 1013; Fuller v. Ins. Co., 184 Mass. 12 (67 N. E. Repr. 879); Fuller v. Jameson, 98 N. Y. App. Div. 53 (90 N. Y. Supp. 456); Keeney v. Ins. Co., 71 N. Y. 396; Thompson v. Ins. Co., 136 U. S. 287 (10 Sup. Ct. Repr. 1019); Com. Ins. Co. v. Berger, 42 Pa. 285; Collins v. Assur. Corp., 165 Pa. 298; McGinnis v. Ins. Co., 38 Pa. Superior Ct. 390.

A receiver in bankruptcy is a mere custodian and has no title to the property of the bankrupt: In re Kelly Dry Goods Co., 102 Fed. Repr. 747; Boonville National Bank v. Blakey, 107 Fed. Repr. 891; In re Winship, 120 Fed.

Repr. 93; In re Kolin, 134 Fed. Repr. 557; In re Benedict, 140 Fed. Repr. 55.

PER CURIAM, January 2, 1912:

The facts and the law applicable thereto in each of these cases are the same. The judgment in each is affirmed for the reasons stated in the opinion of Judge CARNAHAN.