CHARLOTTE A. RING & another *vs.* PHŒNIX ASSURANCE COMPANY.

Suffolk.   Nov. 14, 1887. — Jan. 3, 1888.   DEVENS & W. ALLEN, JJ., absent.

A policy of insurance was issued, in the form prescribed by the Pub. Sts. c. 119, § 139, against loss by fire, upon chattels, while contained in a certain house "occupied the year around." A loss occurred in May, and during the previous October, and for a few days before and after, the house was unoccupied. The judge instructed the jury that the plaintiff must satisfy them that the building containing the property answered the description in the policy at the time when the contract was made and at the time of the fire, and the attention of the jury . was called to the nature of the occupancy as a circumstance to be considered in determining whether the house could be called a building "occupied all the year around." *Held*, that the instructions were sufficiently favorable to the defendant, and that the action could be maintained.

Under the Pub. Sts. c. 119, §§ 138, 139, 181, a misrepresentation made in obtaining a policy of fire insurance is to be deemed material, if the matter misrepresented increases the risk of loss, although not made with intent to deceive.

HOLMES, J.   The policy sued upon is a Massachusetts standard policy. Pub. Sts. c. 119, § 139. The " description of

property insured " describes various chattels, " all while contained in the frame dwelling-house known as the ' Pebbly Beach House,' Bass Rocks, Gloucester, Mass., (on Ocean Avenue,) and occupied the year around." The judge instructed the jury that the plaintiffs must satisfy them that the building containing the property insured answered the above description at the time when the contract was made, and also at the time of the fire. The fire took place on May 4, 1884, and the attention of the jury was directed to the fact, that during the previous October, and for a few days before and after, the family in charge lived in the adjoining laundry building, and not in the house where the insured property was, as a circumstance to be considered by them in determining whether it properly could be called a building " occupied all the year around."

These instructions were sufficiently favorable to the defendant. Assuming that the jury could not have found that the break in October was of so trifling a nature as not to prevent its remaining a house " occupied all the year around," or that the house was occupied in October, and assuming also that the words quoted look to the future occupation of the house, and that the plaintiff could not have recovered for a loss while the house was unoccupied, the stipulation must be taken to have been satisfied if the permanent occupation was resumed so long before the fire that the temporary absence of an occupant plainly appears to have had no connection with the loss. *Hinckley* v. *Germania Ins. Co.* 140 Mass. 38.

The description is not a description of the insured articles, but of the house where they are contained ; and although the introductory words, " while contained in," governing the whole clause, fairly enough may be held to confine the operation of the policy to such time as the articles are contained in a house answering to the whole of that description, we see no reason why they should do more than suspend the insurance while the articles are not contained in such a house. The fact that the house was unoccupied for a short time six months before the fire, can have no greater effect than removing the goods to safety deposit vaults would have done. In either case, we assume, the goods would not have been covered by the insurance for the time being ; but it would be a startling proposition that in the latter

case the insurers would have had a right to repudiate the policy after the goods had been brought back to the place mentioned in it.

After instructing the jury concerning the contract, the court proceeded to deal with certain representations made by one who, as the court stated, " was confessedly the authorized agent and representative of the plaintiffs." These were contained in a paper headed " Application for insurance," and in a letter and a plan accompanying it. Some of these representations were similar to the statements in the policy already discussed, and necessarily fell under consideration with the rest as representations. But all that was said plainly referred to the contents of these other papers, and did not qualify or change the instructions with regard to the stipulations of the contract.

So far as the occupation of the house was concerned, the representation seems to have been of no importance as such, since the clause was made a part of the contract, and the plaintiffs were held to the rules applicable to such a clause when part of the contract. *Goddard* v. *Monitor Ins. Co.* 108 Mass. 56, 59. But there was also a representation, not made part of the contract, that there were no houses within one hundred feet, which may not have been literally accurate, because the pool-room belonging to the house, but in a separate building, was not mentioned.

The jury were instructed to consider whether the facts stated were matters material to the risk, — " whether insurance companies are accustomed to charge more where there are wooden buildings near to that which they are about to insure " (*Luce* v. *Dorchester Ins. Co.* 105 Mass. 297, 301) ; if the facts were material, whether the representations were false; and, if false, whether the representations were made innocently and by mistake, and so fairly made. We are of opinion that there was error in putting the last question to the jury, and in thus allowing them to find for the plaintiffs if they had made misrepresentations on matters which increased the risk of loss, provided they had not been guilty of fraud.

It is true that the St. of 1864, *c.* 196, now the Pub. Sts. *c.* 119, § 138, enacts, with regard to fire insurance, that the application shall not be considered as a warranty or a part of the contract. But it seems to have been thought in *Eastern Railroad*

v. *Relief Ins. Co.* 98 Mass. 420, 426, that this statute did not change the common law rule bearing upon this case, concerning representations forming the basis of a policy. *Kimball* v. *Ætna Ins. Co.* 9 Allen, 540, 542. *Campbell* v. *New England Ins. Co.* 98 Mass. 381, 390, 396. *Moens* v. *Heyworth*, 10 M. & W. 147, 157, 158. However this may be, the effect of the later St. of 1878, *c.* 157, now the Pub. Sts. *c.* 119, § 181, is, that, if the matter misrepresented increases the risk of loss, it still may defeat the policy, although not made with intent to deceive. The provision of § 138, that the application shall not be considered a warranty, means only that an inquiry into the effect of matters there represented upon the risk of loss shall not be cut off, and that substantial accuracy as to material facts shall be sufficient. Perhaps the rest of the section makes it more difficult to say, as in the decisions cited, that in case of a material misrepresentation there has been no agreement upon the subject matter of the contract, because that form of statement seems to imply that material representations are tacitly incorporated into the description in the contract of the property insured, and thus to bring the cases within the principles of *Goddard* v. *Monitor Ins. Co., ubi supra, Gardner* v. *Lane*, 98 Mass. 517, *S. C.* 12 Allen, 39, and 9 Allen, 492, where there was a disagreement between the express words of the description and the designated object. But although misrepresentations which form no part of a contract in any sense, but merely offer motives for making it, commonly do not affect its validity unless fraudulent, it is perfectly possible to require the insured to see at his peril that his material statements are true, if it is thought politic to do so, because of the necessity which the insurer is under of seeking the information, and of getting it in that way. So the law stood after the St. of 1878, and probably before; *Eastern Railroad* v. *Relief Ins. Co., ubi supra;* and whether it required a change in the mode of statement or not is unimportant for our present purposes. The substantive reasons which led to the common law rule are still recognized as in full force.

There has been no change in the law since, unless one was made by the St. of 1881, *c.* 166, now the Pub. Sts. *c.* 119, § 139, fixing the form of the standard policy. The material language is, " This policy shall be void if any material fact or

circumstance stated in writing has not been fairly represented by the insured." Of course it is possible to read the word "fairly" as meaning "honestly," and as cutting down the effect of misrepresentations which form the basis of insurance to the single case of fraud. But it is just as possible to read the word as requiring a fair correspondence between the representation and the fact; and in view of the well-known reasons for requiring it to which we have referred, and of the fact that the St. of 1878 stands upon the statute-book in § 181 unmodified, although manifestly inconsistent with the former interpretation, we are of opinion that this latter reading must be adopted.

*Exceptions sustained.*

*A. Russ & J. D. Bryant,* for the defendant.

*L. W. Howes,* for the plaintiffs.