## Richmond.

COMBINED SAW AND PLANER CO. V. FLOURNOY, SEC'Y.

April 14th, 1892.

1. COURT CHARTERS—*Repeal of act requiring fee.*—Acts, February 10, 1890, chap. 54, § 1, provided that every charter thereafter granted under Code, § 1145, and every act of incorporation thereafter passed by the general assembly shall be inoperative until the payment of a certain fee. Act February 28, 1890, chap. 124, § 1, amends the former act and omits the words " granted under Code, § 1145 ";
HELD :
    There is no law requiring the payment of the fee in question.
2. IDEM—*Omission—Evidence of draftsman.*—The testimony of draftsman of the amendatory act, showing that the omission of those words was inadvertent, is not admissible.
3. STATUTES—*Construction—Tax-payers.*—Statutes levying taxes on citizens are construable most strongly against the government, and a doubt should relieve the tax-payer.

Petition of the Combined Saw and Planer Company and others, relators, for a writ of *mandamus* to compel Henry W. Flournoy, Secretary of the Commonwealth of Virginia, to receive the certified charter of incorporation of company, to be lodged in his office as such secretary. Opinion states the case.

*W. Willoughby*, for petitioners.

*Attorney-General R. Taylor Scott*, for respondent.

FAUNTLEROY, J., delivered the opinion of the court.

The Combined Saw and Planer Company, John Bowles, George S. Bowen, James P. Streeter, L. D. Stone, E. R. L. Tighe, James L. Fleming, William H. Roberts, A. I. Willard and Wertel Willoughby, relators, by their petition, pray for a writ of *mandamus* against Henry W. Flournoy, Secretary of the Commonwealth of Virginia, and show to this court that on the 3d day of January, 1891, they obtained from the judge of the corporation court of the city of Alexandria, Virginia, an allowance of a charter of incorporation, under the name and style of "The Combined Saw and Planer Company," with a capital stock of $2,000,000, divided into twenty thousand shares of one hundred dollars each, and for certain purposes named therein, as appears by the following order:

"Upon motion of W. Willoughby, attorney for the parties named in the above certificate, before me, in vacation:

"Ordered, That a charter of incorporation be, and the same is hereby, granted to the persons named therein, upon the terms therein set forth. The clerk of the corporation court of the city of Alexandria, Virginia, is hereby directed to enter this order in the book provided and kept for such purposes.

"J. K. NORTON,
"Judge of the Corporation Court of the
City of Alexandria, Virginia."

"Virginia—Corporation Court of the City of Alexandria:

"Clerk's Office, January 3d, 1891.

"The foregoing charter of incorporation of the Combined Saw and Planer Company was received and recorded, and is hereby certified to the secretary of the commonwealth, to be by him recorded according to law.

"Teste:          JOHN S. BEACH, Clerk."

That, on the 10th day of January, 1891, the said charter of incorporation so duly certified by the clerk as having been duly recorded in his said office, and all the requisite fees for recording the same having been paid, was duly presented by the said relators to the said secretary of the commonwealth, to be lodged in the office of the said secretary of the commonwealth, and request was made that the same might be lodged therein, and that the same might be recorded in said office according to law; and the said relators then tendered to the said secretary of the commonwealth the amount of the fees required for having the said charter of incorporation lodged and recorded in the said office of the secretary of the commonwealth according to law. But the said secretary of the commonwealth refused to receive the said charter of incorporation for the purpose of being lodged in his said office and recorded, and refused to receive such fees, upon the ground alleged that it was not proper for him so to do unless a fee of $200 should be paid into the state treasury, and the fact of such payment be certified to him by the auditor of public accounts.

The relators say and allege that they are entitled, by law, to have the said certified charter of incorporation lodged in the office of the secretary of the commonwealth and recorded therein, without the payment of such fee of $200, and without the certification thereof, as claimed and required by the said secretary of the commonwealth.

They make known to this court that they are without remedy in the premises without the interposition of the writ of *mandamus*, which they pray may issue out of this court, directed to the said Henry W. Flournoy, Secretary of the Commonwealth of Virginia, commanding him to receive the said certified charter of incorporation of "The Combined Saw and Planer Company" in the office of the secretary of the commonwealth of Virginia, to be lodged therein, and that he cause the same to be recorded therein upon the same being presented

to him for such purpose by any person authorized to present the same and payment to him of the lawful fees for recording the same.

A copy of the said petition of the relators was duly executed by delivery to Henry W. Flournoy, Secretary of the Commonwealth of Virginia, summoning him to appear and answer the same on the 5th day of March, 1891.

By act of February 10th, 1890 (Acts of Assembly, chap. 54, p. 43) it was enacted: "Section 1. That every charter of incorporation hereafter (granted under the provisions of section 1145 of the Code of Virginia, and every act of incorporation hereafter) passed by the general assembly, shall be and continue to be wholly inoperative and ineffectual for any and all purposes whatever until the payment of a fee to be ascertained and fixed as follows: For a company whose maximum capital stock is five thousand dollars, and not·to exceed ten thousand dollars, ten dollars," &c., closing up with " over one million dollars, two hundred dollars." By act of February 28th, 1890 (Acts of Assembly, chap. 126, p. 98) it was enacted that section 1 of the act of February 10th, 1890, be amended and re-enacted so as to read as follows.: " Section 1. That every charter of incorporation hereafter passed by the general assembly shall be and continue to be wholly inoperative and ineffectual for any and all purposes whatsoever until the payment of a fee to be ascertained and fixed as follows: For a company, &c., after the words " one million dollars, two hundred dollars " are inserted " For the purposes of this act, the amount to which the company is authorized by the terms of its charter to increase its capital stock, shall be considered as its maximum capital stock, but the fee to be paid under this section shall in no case exceed the ·sum of two hundred dollars." In the act of February 28th, the following words, which were in the act of February 10th, 1890, were omitted: " granted under the provisions of section 1145 of the Code of Virginia, and every act of incorporation hereafter."

The act of February 28th, 1890, expressly refers to the statute of February 10th, 1890, and amends and re-enacts it so as to repeal the requirement of the payment of the fee required by the act of February 10th, 1890, of companies who obtained charters under section 1145 of the Code—that is, from the courts. There is now no law in force that a charter granted under the provisions of section 1145 shall be inoperative and ineffectual until the payment of the fees which are required of companies chartered by the general assembly.

The respondent secretary of the commonwealth in his answer to the petition of the relators, says : " Respondent verily believes, is advised and charges that the omission aforesaid was the result of misadventure and accident and not intended by the legislature. Hon. R. Walton Moore, senator from the fourteenth district, was the draftsman and patron of the bill in the senate where it originated. He also prepared the amendment, and therefore knows its purpose, true meaning and intent. In a written statement, sworn to and made in October past, at the request of the attorney-general filed herewith, marked exhibit ' C ' and prayed to be read as part hereof, Senator Moore says : ' The omission of the words every charter of incorporation hereafter granted under the provisions of section 1145 Code of Virginia, in the printed act, is the result of a clerical error at some stage of the bill's progress, and not of the intention of the legislature to exempt court charters from the payment of the tax; because, as above-stated, there was never the faintest intimation of an intention to make such an exemption.' " Thus, it is assumed, by a mere ministerial officer of the executive department of the government, to refuse to receive for lodgment and recordation in the office of the secretary of the commonwealth of Virginia, a charter of incorporation granted by the corporation court of the city of Alexandria, according to the provisions of section 1145 of the Code of Virginia, and duly certified to him by the clerk of the

said court, because *he* " verily believes, is advised and charges "
that the deliberate repeal and positive exclusion from the act
of 28th February, 1890, of the requirement as to charters
granted by the courts according to law, contained in the act of
February 10th, 1890, " was the result of misadventure and
accident and not intended by the legislature ; " and because
the draftsman and patron of the bill in the legislature certifies,
at the request of the attorney-general, that " the omission of
those words ' every charter of incorporation hereafter granted
under the provisions of section 1145 of the Code of Virginia, in
the printed,' solemnly attested and promulgated act of February
28th, 1890, ' is the result of a clerical error *at some stage of the
bill's progress!* ' " This cannot be allowed. It is forbidden by
law, reason and public policy. See *Wise* v. *Bigger*, 79 Va.
(4 Hansbrough), 269.

" It is a well settled rule, that, when any statute is revised,
or one act framed from another, some parts being omitted,
the parts omitted are not revived by construction, but are to
be considered as annulled. To hold otherwise, would be to
impute to the legislature gross carelessness, or ignorance,
which is altogether inadmissible." *Ellis* v.*Paige*, 9 Picker-
ing, 45.

" When a statute is revised, and a provision contained in it
is omitted in the new statute, the inference to be drawn from
such a course of legislation, would be that a change in the law
was intended to be made. If the omission was by accident, it
belongs to the legislature to supply it." *Buck* v. *Spofford*, 31
Maine, 36 ; see, also, *Bedell* v. *Janney*, 4 Gilman, 200. " Statutes
which impose restrictions upon trade or common occupation,
or which levy an excise or tax upon them, must be construed
strictly." *Sewell* v. *Jones*, 9 Pickering, 414.

" Statutes levying duties or taxes upon subjects or citizens
are to be construed most strongly against the government,
and in favor of their subjects or citizens, and their provisions

are not to be extended, by implication, beyond the clear import of the language used. Revenue laws are neither remedial statutes nor laws founded upon any permanent public policy, and are not therefore to be liberally construed. Hence, whenever there is a just doubt, that doubt should absolve the taxpayer from his burden." *Mayor of Savannah* v. *Hartridge*, 8 Georgia, 30.

" I do not think that a strained construction is allowable of an act which levies money from the citizen. The amount of the levy, the subject of it, and the method of raising it ought to be so plainly pointed out, as to avoid all danger of oppression by an erroneous interpretation; and where there is a fair doubt, the citizen should have the advantage of it." *State* v. *Bank of Newburn*, 1 Devereux & Battles, 218.

" It is a well settled rule of law that every charge upon the subject must be imposed by clear and unambiguous language. Acts of Parliament which impose a duty upon the public, will be critically construed with reference to the particular language in which they are expressed. When there is any *ambiguity* found, the construction must be in favor of the public, because it is a general rule that when the public are to be charged with a burden, the intention of the legislature to impose that burden must be explicitly and distinctly shown." Dwarris on Statutes, 255–789, Ed. 1885. " In the revenue laws where clauses inflicting pains and penalties are ambiguously or obscurely worded, the interpretation is ever in favor of the subject, for the plain reason that the legislature is ever at hand and explains its own meaning, and to express more clearly what has been obscurely expressed." Dwarris on Statutes, 251, Ed. 1885.

The act of February 28th, 1890, has no effect whatever as to charters obtained through the courts; and, according to the law, section 1145, Code of Virginia, two duties are required of the secretary of the commonwealth, viz: lodgment and

recordation in his office, upon the certificate of the clerk of the court which has granted the charter, and the presentation of the charter and the payment of the proper and lawful fee. The respondent has refused to perform a mere ministerial function and duty imposed by law; and our judgment is that the writ of *mandamus* shall issue according to the petition of the relators. *Let the writ go.*

MANDAMUS AWARDED.