## Staunton.

### WESTERN ASSURANCE COMPANY v. STONE.

September 23, 1926.

1. STATUTES—*Revision—Statute Revising the Subject Matter of a Former Statute—Repeal of Former Statute.*—A subsequent statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former.

2. STATUTES—*Revision of Former Statute—Part of Former Statute Omitted from Later Statute.*—When any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the legislature gross carelessness, or ignorance, which is altogether inadmissible; and this rule applies where one act or one section of an act is framed from another.

3. STATUTES—*Repeal—Repeal a Question of Legislative Intent.*—Whether or not a later act shall be construed to repeal an earlier one on the same subject is a question of legislative intent to be gathered from a comparison of the two acts, the language used in the later act and the facts and circumstances surrounding its enactment. General rules of interpretation are helpful, but no hard and fast rule can be laid down on the subject.

4. INSURANCE—*Failure to Perform Conditions—Failure not Contributing to the Loss Sustained—Statutes—Repeal—Whether the Provision in Section 4227 of the Code of 1919 is Repealed by Acts of 1918, Page 339—Case at Bar.*—Code of 1919, section 4227, in regard to the restrictions in insurance policies contained the following clause: "Nor shall failure to perform any condition of such policy, nor a violation of any restrictive provision thereof, be a valid defense to an action thereon, unless such failure or violation contribute to the loss sustained." The same legislature which enacted the Code, without making any reference to section 4227, enacted a statute covering the subject matter of section 4227, but omitted the clause quoted above, Acts of 1918, page 339. If the act of 1918, page 339, had in terms amended and re-enacted section 4227 of the Code of 1919 there could be no doubt that it would have repealed the omitted words; and if the intent to repeal was otherwise manifested there would be no differ-

ence. A comparison of section 4227 of the Code of 1919 with the act of 1918, page 339, makes it apparent that the draftsman of the act of 1918 had before him section 4227 of the Code of 1919 and intended to change that section.

*Held:* That it was not to be supposed that the legislature was ignorant of the provisions of section 4227 of the Code of 1919, which it had enacted only nine days previously, when it enacted the act of 1918, page 339; and under section 6568 of the Code of 1919 the clause of section 4227 omitted from the act of 1918, page 339, was repealed by that act.

5. STATUTES—*Code of 1919—Acts of 1918 to Prevail Over the Code—Section 4227 of the Code of 1919 and Acts of 1918, page 339.*—It was provided that the Code of 1919 should not go into effect until January 13, 1920—the date the next legislature would meet in regular session—and that the Acts of 1918 should be deemed subsequent to the Code, and should prevail over it so far as they varied from the Code, Code of 1919, section 6568. It cannot be doubted that the act of 1918, page 339, and section 4227 of the Code of 1919 dealt with the same subject, and that the act of 1918 "varied from" section 4227 of the Code of 1919. Therefore, section 4227, so far as it is at a variance with the act of 1918, page 333, is repealed thereby.

6. FIRE INSURANCE—*Change of Ownership or Possession—Temporary Change.*—Many cases in construing the ordinary clause in fire insurance policies against change of ownership or possession hold that where there is only a temporary change of possession, there is a breach of the contract and the avoidance is complete, and the contract is not thereafter revived by a removal or cessation of the cause of the breach, but the better reason is against such a conclusion. Such a literal interpretation of the clause would avoid the policy if the change of possession was wrongful and subsequently recovered.

7. FIRE INSURANCE—*Change of Ownership or Possession—Temporary Change—Temporary Seizure of the Property by the Sheriff—Case at Bar.*—In the instant case, an action on a fire insurance policy on a store house and stock of goods, the policy contained the usual clause against change of possession or ownership. Two days before the fire a deputy sheriff levied on the stock of goods, locked the door of the store house and took the key. He kept the key one or two hours, when upon a receipt of a check from the insured he surrendered the key to him. This check was never paid. The property was in the same possession at the time of the fire as at the time of the issuance of the policy, the interest of the assured was the same, nothing done or suffered by the assured had increased the risk of insurer, and the temporary possession of the sheriff for less than two hours in no way contributed to the loss.

*Held:* That there had been a substantial compliance with the terms of the policy, and to permit a technical violation of a doubtful provision of the policy, in no way increasing the risk of the insurer, to defeat a recovery, would not accord with justice.

Error to a judgment of the Circuit Court of Dickenson county, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Sands, Williams & Lightfoot,* for the plaintiff in error

*A. A. Skeen,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This was an action on a fire insurance policy on a storehouse and stock of goods.

On Saturday, May 3, 1924, while the policy was in force, a deputy sheriff of Dickenson county levied certain executions in his hands against the insured on the said stock of goods, placed a lock on the storehouse, locked the door, and took the key. He kept the key from one to two hours, when, upon delivery to him of a check of the assured of five hundred dollars, to be applied to the executions, and upon representations made to the deputy, he surrendered the key to the assured.

The property was destroyed by fire about two o'clock a. m. on Monday, May 5, 1924, and the company refused payment on the ground of the violation of a condition of the policy. There was a judgment for the assured for the agreed value of the loss.

The policy was in the New York standard form, containing the three-fourths value clause and the following condition: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto,

shall be void  *  *  *  if any change, other than by death of an assured, takes place in the interest, title, or possession of the object of the insurance (except change of the occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the assured, or otherwise."

The assured contended that he was entitled to recover because (1) a statute of this State rendered the above mentioned condition inoperative, and (2) independently of the statute, the law was in his favor.

1. The statute referred to is section 4227 of the Code of 1919. The Code was enacted March 7, 1918, to go into effect January 13, 1920, and section 6568 thereof provides: "The enactment of this Code shall not affect any act passed by the General Assembly, which shall have become a law after the ninth day of January, nineteen hundred and eighteen, and before the thirteenth day of January, nineteen hundred and twenty; but every such act shall have full effect, and so far as the same varies from or conflicts with any provision contained in this Code, it shall have effect as a subsequent act, and as repealing any part of this Code inconsistent therewith."

Section 4227 is as follows: *"Type in Which Conditions and Restrictions to be Printed; Limitations to Actions.*—No condition in, or endorsed on, any policy of insurance, nor any restrictive provision thereof, shall be valid unless such condition or restrictive provision is printed in type as large as brevier, or eight-point type, or is written in pen and ink or typewriter, in or on the policy, and no provision in any policy of insurance limiting the time within which a suit or action may be brought to less than one year after loss shall be valid, *nor shall failure to perform any condition of such policy, nor a violation of any restrictive provision thereof, be a*

*valid defense to an action thereon, unless such failure or
violation contribute to the loss sustained.*"

The section, as stated in the revisor's note, was based
on Acts 1912, p. 547. Section 39 of that act (p. 551)
provided "that nothing herein contained shall relate to
or affect photographic copies of applications or parts
thereof attached to or made parts of policies of insur-
ance." This proviso was omitted by the revisors for
reasons stated in their note to that section.

The legislature of 1918, which had enacted the Code,
without making any reference to section 4227, enacted
the following statute:

"An act prescribing the style of type in which con-
ditions and restrictive provisions of insurance policies
shall be printed, and to define the time in respect to
which insurers may limit the right to institute suit or
action upon such policies, and regulating the filing of
proof of loss.

"1. Be it enacted by the General Assembly of Virginia,
That no condition in, or endorsed on, any policy of in-
surance, nor any restrictive provision thereof, shall be
valid unless such condition or restrictive provision is
printed in type as large as brevier or eight-point type,
or is written in pen and ink, or typewritten in or on such
policy; provided, however, that nothing herein con-
tained shall relate to or affect photographic copies of
application, or parts thereof, attached to or made parts
of policies of insurance.

"2. No provision in any policy of insurance limiting
the time within which a suit or action may be brought
to less than one year after loss shall be valid.

"3. That where the policy of insurance requires the
proof of loss to be filed within a specified time, all time
consumed in an effort to adjust the loss is not to be con-
sidered as a part of such time." Acts 1918, p. 539.

This statute restores *in ipsissimis verbis* the language of the act of 1912 as to photographic copies. The last section makes a saving as to the calculation of time within which the proof of loss is to be filed, and the act omits the words italicized in section 4227 above quoted. The question involved is, did the act of 1918 repeal that part of section 4227 which we have italicized?

In an able opinion by Judge Rose, speaking for himself and Judge Waddill, in *Continental Ins. Co.* v. *Simpson*, 8 (2d Fed. 439, U. S. Cir. Ct. of App., Fourth Cir.), the view is taken that the act of 1918 did not repeal the portion of section 4227 referred to. The conclusion reached is founded on the doctrine that repeals by implication are not favored. We refer to the case for the reasons and the authorities on which it is based. The opinion also very fairly states the exception to the general rule and a number of authorities which sustain it in the following language: "It is a well settled rule in the construction of statutes, often affirmed and applied by this court, that 'even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.' *United States* v. *Tynen*, 11 Wall. 88, 92 (20 L. Ed. 153); *King* v. *Cornell*, 106 U. S. 395, 396 (1 S. Ct. 312, 27 L. Ed. 60); *Tracy* v. *Tuffey*, 134 U. S. 206, 223 (10 S. Ct. 527, 33 L. Ed. 879); *Fisk* v. *Honarie*, 142 U. S. 459, 468 (12 S. Ct. 207, 35 L. Ed. 1080); *District of Columbia* v. *Hutton*, 143 U. S. 18, 27 (12 S. Ct. 389, 36 L. Ed. 60); *United States* v. *Healey*, 169 U. S. 136, 147 (16 S. Ct. 247, 40 L. Ed. 369); *The Paquete Habana*, 175 U. S. 677, 684-685 (20 S. Ct. 290, 294, 44 L. Ed. 320); *Murphy* v. *Utter*, 186 U. S. 95, 106 (22 S. Ct. 776, 46 L. Ed. 1071); *Combined Saw, etc., Co.* v. *Flournoy*, 88 Va. 1029, 14 S. E. 976; *Vansant Co.* v. *Com.*, 108 Va. 135, 60 S. E. 753."

In *Fox* v. *Com'th*, 16 Gratt. (57 Va.) 1, the facts are thus stated in the opinion of the court: "In 1854-5 there was no session of the legislature; and therefore the tax law passed in 1853-4 was the law for the fiscal year ending in 1854 and 1855.

"In 1855-6, Sess. Acts, p. 11, an act was passed entitled 'an act imposing taxes for the support of government,' the commencement and first seven sections of which have been literally copied from the act of 1853-4 (except that the amount of the taxes is very much increased in the act of 1855-6), and many other sections of the two acts bear a close resemblance; showing that the later act was penned with the former before the draftsman; though in many respects the two acts differ both in form and substance.   The point of difference most material to the present inquiry is that the act of 1855-6 wholly omits the tax on collateral inheritances, while it literally copies, except as to amount of taxes, the section which next preceded and that which next follows the section imposing a tax on collateral inheritances in the act of 1853-4, and also in the act of 1852-3. It contains no express repeal of chapter 40 of the Code, as does the act of 1853-4, and also do the two next preceding tax acts."

[1] It was held that the later statute repealed by implication the former.   In the course of the opinion the following statement is quoted from *Bartlett* v. *King*, 12 Mass. 537, 545:   " 'A subsequent statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former; according to the cases of *Rex* v. *Cator*, 4 Burr. R. 2026, and the *King* v. *Davis*, 1 Leach's Cases, 306 '."

[2] In *Combined Saw & Paper Co.* v. *Flournoy*, 88 Va. 1029, 14 S. E. 976, it is said: " 'It is a well settled rule that when any statute is revised, *or one act framed* from another, some parts being omitted, the parts omitted are not revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the legislature gross carelessness, or ignorance, which is altogether inadmissible. *Ellis* v. *Paige*, 1 Pickering 45.' (Italics supplied.)

" 'When a statute is revised, and a provision contained in it is omitted in the new statute, the inference to be drawn from such a course of legislation would be that a change in the law was intended to be made. If the omission was by accident, it belongs to the legislature to supply it.' *Buck* v. *Spofford*, 31 Maine 36. See also *Bedell* v. *Janney*, 4 Gilman 200."

In *Murdock* v. *Memphis*, 20 Wall. 590, 22 L. Ed. 429, Mr. Justice Miller said: "In the year 1867 Congress passed an act, approved February 5th, entitled 'an act to amend an act to establish the judicial courts of the United States,' approved September 24, 1789, 14 Stat. at L. 365. This act consisted of two sections, the first of which conferred upon the Federal courts and upon the judges of those courts additional power in regard to writs of *habeas corpus*, and regulated appeals and other proceedings in that class of cases. The second section was a reproduction, with some changes, of the 25th section of the act of 1789, to which, by its title, the act of 1867 was an amendment, and it related to the appellate jurisdiction of this court over judgments and decrees of State courts.

\*        \*        \*        \*        \*        \*        \*        \*        \*

"The questions propounded by the court for discussion by counsel were these:

"1. Does the second section of the act of February,

1867, repeal all or any part of the 25th section of the act of 1789, commonly called the judiciary act?

\* \* \* \* \* \* \* \* \*

"The act of 1867 has no repealing clause nor any express words of repeal. If there is any repeal, therefore, it is one of implication. The differences between the two sections are of two classes, namely: The change or substitute of a few words or phrases in the latter for those used in the former, with very slight, if any, change of meaning, and the omission in the latter of two important provisions found in the former. It will be perceived by this statement that there is no repeal by positive new enactments inconsistent in terms with the old law. It is the words that are wholly omitted in the new statute which constitute the important feature in the questions thus propounded for discussion."

In the course of the opinion it is said:

"A careful comparison of these two sections can leave no doubt that it was the intention of Congress, by the latter statute, to revise the entire matter to which they both had reference, to make such changes in the law as it stood as they thought best, and to substitute their will in that regard entirely for the old law upon the subject. We are of opinion that it was their intention to make a new law so far as the present law differed from the former, and that the new law embracing all that was intended to be preserved of the old, omitting what was not so intended, became complete in itself and repealed all other law on the subject embraced within it. The authorities on this subject are clear and uniform. *U. S.* v. *Tynen*, 11 Wall. 88 (78 U. S. XX 153), 20 L. Ed. 153; *Henderson's Tobacco*, 11 Wall. (78 U. S.) 652, 20 L. Ed. 235; *Bartlett* v. *King*, 12 Mass. 537, 7 Am. Dec. 99; *Com.* v. *Cooley*, 10 Pick. 36 [37]; Sedg. Stat. 126.

"The result of this reasoning is that the 25th section

of the act of 1789 is technically repealed, and that the second section of the act of 1867 has taken its place. What of the statute of 1789 is embraced in that of 1867 is of course the law now, and has been ever since it was first made so. What is changed or modified is the law as thus changed or modified. That which is omitted ceased to have any effect from the day that the substituted statute was approved."

In *Ellis* v. *Paige*, 1 Pick. (Mass.) 43, it was said: "It is a well settled rule that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the legislature gross carelessness or ignorance; which is altogether inadmissible. We are not therefore at liberty to suppose that the proviso or exception in the provincial statute was omitted by mistake; and f not, then clearly it was the intention of the legislature to place all parol demises on the same footing; for such is the obvious import of the language of the statute of frauds."

In *Roche* v. *Mayor, &c.*, 40 N. J. L. 257, it was held: "Every statute must be considered according to what appears to have been the intention of the legislature, and even though two statutes relating to the same subject be not, in terms, repugnant or inconsistent, if the later statute is clearly intended to prescribe the only rule which should govern the case provided for, it will be construed as repealing the earlier act. The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the legislature makes a revision of a particular statute, and frames a new statute upon the subject matter, and from the framework of the act it is apparent that the legislature designed a complete scheme for this matter, it is a legislative dec-

laration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded   It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory.''

In *Rhodes* v. *J. B. B. Coal Co.*, 74 W. Va. 71, 75, 90 S. E. 796, 797, it was said:   "It seems to be a well settled rule of construction that when a statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled.   The Supreme Court of Massachusetts, in *Ellis* v. *Paige*, 1 Pick. (Mass.), 43, 45, says: 'To hold otherwise would be to impute to the legislature gross carelessness or ignorance; which is altogether inadmissible.'

"This rule has been fully recognized and stated in its fullness by a standard writer on statutory construction. 1 Lewis' Sutherland on Statutory Construction (2d ed.), sec. 270, with copious citation of decisions in the notes. See also, *Combined Saw & Planer Co.* v. *Flournoy*, 88 Va. 1029, 14 S. E. 976.''

[3] It is true that in a number of the cases cited the revision was very much more extended than in the instant case, but the same rule should apply where one act, or one section of an act, is framed from another.   At last, whether or not a later act shall be construed to repeal an earlier one on the same subject is a question of legislative intent to be gathered from a comparison of the two acts, the language used in the later act and the facts and circumstances surrounding its enactment. General rules of interpretation are helpful, but no hard and fast rule can be laid down on the subject.   If, from the sources indicated, the legislative intent can be discovered, effect will be given to it.

There is practically no difference between us and the

Circuit Court of Appeals as to the law of the case. Our difference lies in its application. If the act of 1918 had in terms amended and re-enacted section 4227, there can be no doubt that it would have repealed the omitted words. What difference can it make if the same intent is otherwise manifested? The act of 1918 copies section 4227 down to the provision as to photographic copies stricken out by the revisors, and at this point re-inserts the provisions of the act of 1912, and follows this with the act of limitations which is common to both section 4227 and the act of 1912. In the act of 1912, the provision for photographic copies comes after the act of limitations, whereas, in the act of 1918, it comes before. If the Act of 1918 had been taken directly from the act of 1912, the provisions would have come in the same order. But when we look to section 4227 we find that the provision for photographic copies is put in the most convenient and appropriate place in that section. The act of 1918 divides the statute into three sections. The first section dealt with the size of the type and hence it was appropriate to put the exceptions to the rule in that section. The conclusion seems well nigh irresistible that the draftsman of the act of 1918 had section 4227 before, him at the time he made the draft. If so, it is manifest that he intended to change it. But what about the legislature? Is it to be supposed that it was ignorant of the provisions of section 4227, which it had enacted only nine days previously? By no means. Then comes the provision of section 6568, declaring that so far as the act of 1918 *varies from* or conflicts with the Code, the act shall have effect as a subsequent act and "as repealing any part of this Code inconsistent therewith."

[4] This is not the ordinary case of a repeal by implication. The whole volume of the statute law of the

State was submitted to the legislature for enactment at one time, and the bill to enact it was introduced in January, 1918, but the legislature wanted time to examine it and to make such changes as it desired.   To accomplish this purpose, it provided that the Code should not go into effect until January 13, 1920—the date the next legislature would meet in regular session—and that the Acts of 1918 should de deemed subsequent to the Code, and should prevail over it so far as they *varied from* the Code.   Can it be doubted that the act of 1918 and section 4227 of the Code dealt with the same subject, and that the act of 1918 "varies from" section 4227 of the Code?   We think not.

It is with the greatest hesitation that we differ from the Circuit Court of Appeals, for which we entertain the highest respect, but it has not attached the importance that we have to the difference between the circumstances under which the acts of 1918 were enacted and the ordinary case of statutes conflicting in part, and has not given as full effect as we think should be given to that provision of section 6568 declaring that whenever an act of 1918 *"varies from"* the Code, "it shall have effect as a subsequent act, and as *repealing* any part of the Code *inconsistent* therewith."

[5, 6]   2. If we could have concurred in the holding in *Continental Insurance Co.* v. *Simpson, supra,* this opinion could have ended here, for it is clear that under section 4227 the plaintiff was entitled to recover. Whether or not, without such a statute, the plaintiff is entitled to recover is a question upon which the authorities are in serious conflict.   Many of the cases are cited in 26 C. J., sec. 240, p. 197.   Many of the cases hold that where there is only a temporary change of possession, there is a breach of the contract and the avoidance is complete, and the contract is not thereafter revived

Western Assur. Co. *v.* Stone, 145 Va. 776.   789

Opinion.

by a removal or cessation of the cause of the breach. But we are of the opinion that the better reasoning is against that conclusion as is well illustrated by the facts of the instant case. A literal interpretation of the clause of the policy referred to would avoid the policy if the change of possession was wrongful, and subsequently recovered.

In *Georgia Home Ins. Co.* v. *Bartlett,* 91 Va. 305, 21 S. E. 476, 50 Am. St. Rep. 832, the insurance was on a building upon which there was a deed of trust to secure creditors. The policy was payable to the trustees as their interest might appear, and contained the following clause: "If any change takes place in the title or possession of the property, whether by sale or judicial decree, without notice to the company and its consent endorsed thereon, then the policy shall be void." The trustees resigned and the court appointed another trustee in their place. It was claimed that the terms of appointment in effect made the new trustee a receiver of the court, and avoided the policy. In discussing the clause of the policy above quoted, the court said: "This condition in the policy against alienation refers only to such a sale or disposition of the property as caused the interest of the assured in or control over the property to cease. *Commercial Union Asso. Co.* v. *Scammon,* 126 Ill. 355, 18 N. E. 562, 9 Am. St. Rep. 607. The object of providing against a transfer or change of title or possession is to guard against a diminution of the strength of the motive which the insured may have to be vigilant in the care of his property.

" 'Any change in or transfer of the interest of the insured in the property of a nature calculated' to make the insured less watchful in guarding and preserving the property from destruction by fire 'is in violation of the policy. But if the real ownership remains the same, if

there is no change in the *fact of title*, but only in the evidence of it, and if the latter change is merely nominal and not of a nature calculated to increase the motives to burn or diminish the motive to guard the property from loss by fire the policy is not violated.' *Ayres* v. *Hartford Fire Insurance Company*, 17 Iowa, 176, 185-6, 85 Am. Du 553."

In *Bowling* v. *Continental Ins. Co.*, 86 W. Va. 164, 103 S. E. 285, 17 A. L. R. 376, the policy covered personal property, and contained a clause identical with that in the instant case. After the policy was issued, a receiver was appointed and took charge of the property. It was held that this did not avoid the policy. In the course of the opinion, it is said: "But even if the possession of the receiver be deemed that of the court, is it not such a change of possession as falls within the condemnation of the insurance policy? Of course the safety and protection of the insurer is dependent to a large extent upon the character of the insured, not alone upon his integrity and good faith, but upon his habits of carefulness, prudence and vigilance. The clause prohibiting a change in interest, title or possession was inserted in the policy for the purpose of avoiding the danger of possible carelessness. But it is not every change of possession that falls within this prohibition. The policy itself excepts those occurring as a result of the death of the insured, and likewise 'changes of occupants without increase of hazard.' Thus there is disclosed an apparent purpose to attach to the word 'possession' a broader significance than ordinarily inheres in the term 'occupant' or 'occupancy.' As said in *Marcello* v. *Concordia Fire Ins Co.*, 234 Pa. 31, 38, 82 Atl. 1090, 1092, 39 L. R. A. (N. S.) 366, respecting this indentical provision:

"In the present policy the word 'occupant' seems

to be used to indicate actual possession or occupancy, and the word 'possession,' as used with the words 'interest' and 'title' in the clause in question, seems to mean legal possession, or possessory right.  *  *  * We do not find that there was any change in the possession except the physical occupancy of the premises, which is not forbidden by the term of the policy of insurance."

"Upon this reasoning the court held that the receiver appointed in the case, who took actual possession of the property of insured, had no possessory right in the legal sense of the term, but was merely a custodian or care taker whose duty it was to conduct the sequestered business so as to maintain, as far as possible, its continuity, in order that, if the final adjudication should be in favor of the owner, his property and business might be returned to him with the least possible damage and impairment."

The case of *Walradt* v. *Phoenix Ins. Co.*, 136 N. Y. 375, 32 N. E. 1063, 32 Am. St. 752, is quite similar, in many respects, to the instant case.   The policy was in the standard form, containing the same clause as in the instant case against change of interest, title or possession, and covered a stock of goods.   The sheriff levied an execution on the goods in the store, and took the key to the store on April 4, 1890.   The property was destroyed by fire that night.   It was held that the policy was not avoided by the action of the sheriff.   In discussing the subject of the change of the possession, it was said: "The change of possession produced by the levy and the action of the sheriff remains to be considered. The policy is not avoided, by the terms of the condition referred to, by every change of possession that may take place in the property.   A change of occupants without increasing the hazard is excepted from the operation of

the condition, and does not invalidate the insurance. The learned counsel for the defendant argues that the exception in the condition does not apply when personal property is the subject of the insurance, and does not apply in this case, as there cannot be an occupant of goods in a store consistent with the ordinary and appropriate use of the language. The general term has shown that the word 'occupant' is sometimes used with reference to personal property. When the subject of insurance is a ship, a building not attached to the soil, so as to become part of the realty, or other things of like character, the term 'change of occupants' would be appropriate. When it is used in reference to goods in a store, its fitness is not so apparent; but as the words of the policy were used to meet all cases, we have no right to say that the exception in the condition was not designed to apply when goods were the subject of insurance merely because the term 'change of occupants' does not seem to be the most natural and appropriate. A large part of contracts of insurance now entered into relate to personal property, and to hold that such an important exception as that now under consideration to the broad terms of a condition had no application to such contracts would make the rights of the parties turn upon the literal meaning of a word. What the parties intended was that a change in the control and dominion over the property should not avoid the policy, unless such change rendered the risk more hazardous. A change in the possession of a store of goods must, moreover, refer to the place where the goods are situated. In this case they are described as situated in a brick store. The place where the goods were kept, though not the subject of insurance, was an important element in the risk, and it was natural and proper for the parties to provide against a more hazardous change

in the occupancy of that place, and hence the parties agreed that in case the possession of the goods changed, that fact alone would not avoid the policy unless the occupancy of the place where they were was also changed in such a manner as to become more hazardous. In this way the words of the exception can be given their ordinary and natural meaning, and the exception itself can have effect. It is only in a plain case that we are warranted in saying that the parties have used language not intended to have any application to the subject-matter of the contract. Whether the change of possession that was shown in this case, followed by a change of occupants, was or was not more hazardous depended upon the circumstances shown, and presented a question of fact, which the learned trial judge properly submitted to the jury, and was determined in favor of the plaintiff. While the act of 1886 (chapter 486) makes the use of uniform policies by insurance companies compulsory, the State did not assume to dictate. its form; that was left to the underwriters themselves, and it must be assumed that they used words and phrases in conditions with reference to the previous decisions of the courts in respect to their meaning and effect, and when they used the expression 'change of interest,' they must have had in mind the fact that this court had held the filing of a mechanic's lien did not work such change; and therefore it is reasonable to assume that it was understood that the lien acquired by a levy upon goods under an execution would have no such effect. So, also, the conditions with respect to change of possession had been frequently construed, and it had been held that the transfer of an interest by one partner to another, or the appointment of a receiver of partnership property in an action to dissolve the partnership, and other acts of the insured in regard to

the subject of the insurance, did not produce such a change within the meaning of conditions substantially like the one in this case: *Kenney* v. *Home Ins. Co.*, 71 N. Y. 396, 27 Am. Rep. 60; *Hoffman* v. *Aetna Fire Ins. Co.*, 32 N. Y. 405, 88 Am. Dec. 337; *Browning* v *Home Ins. Co.*, 71 N. Y. 509, 27 Am. Rep. 86; *Shearman* v. *Niagara Fire Ins. Co.*, 46 N. Y. 526, 7 Am. Rep. 380; *Hitchcock* v. *Northwestern Ins. Co.*, 25 N. Y. 68; *Hennessey* v. *Manhattan Fire Ins. Co.*, 28 Hun. 98."

In *Weisberger* v. *Western Reserve Ins. Co.*, 250 Pa. 155, 95 Atl. 402, it is said: "Counsel for appellee urges that there is another reason why defendant should be absolved from liability for loss. It appears that, while the policy was in force, plaintiff's entire stock of goods in the building mentioned was levied upon by the sheriff under an execution issued upon a judgment against him, and the goods were sold and purchased by the execution creditor. But the stock was not removed from the building, and on the day after the sale it was repurchased by the insured, who thereafter continued business in the same building, and in the same way, as prior to the sheriff's levy. The court below held that the fact that there had been a sheriff's sale did not, under the circumstances, constitute a defense to the claim under the policy. The authorities amply sustain the proposition that where insurance covers a stock of merchandise in a store, and the goods are intended for sale, the condition for the avoidance of the policy by reason of the clause prohibiting change of ownership of possession does not apply where title is regained before the occurrence of a loss by fire, the policy not being forfeited, but only suspended during the temporary failure of ownership. In insurance of this kind, the policy is construed to cover the value of the stock on hand for the time being, no matter how it may be changed from

time to time by the result of sales and purchases.   This is the doctrine of the case of *West Branch Ins. Co.* v. *Helfenstein*, 40 Pa. 289, 80 Am. Dec. 573.  The validity of the insurance is not affected by the fact that the stock may be largely reduced or wholly sold out upon one day and replaced upon the next.   The policy is intended to cover merchandise used for traffic, and it applies to such goods as are in the store, and owned by the insured at the time when the loss occurs."

In *Sumpter & Co.* v. *Phoenix Assur. Co.*, 766 S. C. 76, 56 S. E. 654, 10 L. R. A. (N. S.) 736, 121 Am. St. 941, 11 Ann. Cas. 780, the policy was in the standard form and the property insured was a building.  About a month prior to the fire the insured leased it to another for a more hazardous business.   The lessee went into possession, but, finding the building unsuitable to his business, remained only two or three days, and then moved out.   The occupancy had nothing to do with the fire.   It was held that the policy was not avoided. In the opinion by Woods, J., this is said:   "The contract of insurance must, like other contracts, be enforced according to its terms.   In construing such contracts, however, courts should endeavor to ascertain from the language used, in the light of the surrounding circumstances and the nature of the business, the safeguards which the parties intended to place around themselves.   It may be reasonable to suppose an insurance company would desire to reserve the valuable right of cancelling a policy even on a temporary increase of hazard, if known to it at the time, because such damage might result in loss; but it is not reasonable to impute to it a purpose or desire to curtail its own revenue by cancelling a policy on account of a temporary increase of hazard which has come to an end without loss and from which it could not possibly suffer detriment.

Hence, there may be ground for holding a temporary increase of hazard forbidden by the policy to avoid the insurance without action or even knowledge on the part of the company when the loss resulted from that cause, but there is no ground for such a holding when the increase of hazard came to an end without loss.   The greater weight of authority supports this conclusion: *New England Fire & Marine Ins. Co.* v. *Wetmore,* 32 Ill. 221; *Nat'l Fire Ins. Co.* v. *Catlin,* 163 Ill. 256, 45 N. E. 255, 35 L. R. A. 595; *Born* v. *Home Ins. Co.,* 110 Iowa 379, 81 N. W. 676, 80 Am. St. Rep. 300, and note; *Phoenia Ins. Co.* v. *Lawrence,* 4 Motc. (Ky.) 9, 81 Am. Dec. 521; *United States F. & M. Ins. Co.* v. *Kimberly,* 34 Md. 224, 6 Am. Rep. 325; *Angier* v. *Western Assur. Co.,* 10 S. Dak. 82, 71 N. W. 761, 66 Am. St. Rep. 685, and note; *Doud* v. *Citizens Ins. Co.,* 141 Pa. 47, 21 A. 505, St. Rep. 263; *Adair* v. *Southern M. I. Co.,* 107 Ga. 297, 33 S. E. 78, 45 L. R. A. 204, 73 Am. St. Rep. 122; *Springfield F. & M. I. Co.* v. *Wade,* 95 Tex. 598, 68 S. W. 977, 58 L. R. A. 714, 93 Am. St. Rep. 870; *North B. M. I. Co.* v. *Union Stockyards Co.,* 120 Ky. 465, 87 S. W. 285, 27 Ky. Law Rep. 852; *Springfield F. & M. I. Co.* v. *M(Limans,* 28 Neb. 346, 45 N. W. 171; *Gates* v. *Madison County Ins. Co.,* 5 N. Y. 469, 55 Am. Dec. 360.

"While in the case of *Leggett* v. *Insurance Co.,* 10 Rich. 202, stress was laid on the fact that the action was for insurance on a stock of goods and not on the building in which they were contained, and that, therefore, some of the provisions of the policy similar to those here under consideration had no application, yet in that case the Court of Appeals approved a charge to the effect that an increase of risk permanent and continuous took away the benefit of the policy, even though it did not produce the loss, but that 'an occasional temporary increase of risk took away only the right to complain of loss which

it had occasioned, and did not affect the right to recover for a loss with which it was in no way concerned'."

In *Ring* v. *Phoenix Assur. Co.*, 145 Mass. 426, 14 N. E. 525, the policy was in the standard form, and insured certain chattels "while contained in" a designated house "occupied the year round." The fire took place in May, 1894, and it appeared that in the previous October the family had lived in an adjoining building. In the opinion by Holmes, J., now Mr. Justice Holmes of the U. S. Supreme Court, it is said: "Assuming that the jury could not have found that the breach in October was of so trifling a nature as not to prevent its remaining a house 'occupied all the year round,' or that the house was occupied in October; assuming, also, that the words quoted look to the future occupation of the house, and that the plaintiff could not have recovered for a loss while the house was unoccupied; the stipulation must be taken to have been satisfied if the permanent occupation was resumed so long before the fire that the temporary absence of an occupant plainly appears to have had no connection with the loss. *Hinckley* v. *Insurance Co.*, 140 Mass. 38, 1 N. E. 737, [54 Am. Rep. 445].

"The description is not a description of the insured articles, but of the house where they are contained; and although the introductory words, 'while contained in,' governing the whole cause fairly enough, may be held to confine the operation of the policy to such times as the articles are contained in a house answering to the whole of that description, we see no reason why they should do more than suspend the insurance while the articles are not contained in such a house. The fact that the house was unoccupied for a short time, six months before the fire, can have no greater effect than removing the goods to safety deposit vaults would have done. In either

case, we assume the goods would not have been covered by the insurance for the time being; but it would be a startling proposition that in the latter the insurers would have had a right to repudiate the policy after the goods had been brought to the place mentioned in it."

In *Herman Bro.* v. *Katz,* 101 Tenn. 118, 47 S. W. 86, 41 L. R. A. 700, the personal property insured was levied on by attachment, and, subject to that levy, it was also levied on by execution, and the key to the storehouse in which the merchandise was stored was still in the possession of the sheriff who made the levies at the time of the fire, and yet it was held that the risk or hazard had not been increased, nor the policy avoided; that the change of "occupant" applied to personal property as well as real estate; and that the case presented one of a "change of occupant without increase of hazard."

There are many cases taking a different view. See 26 C. J. sec. 240, p. 197. Those chiefly relied on for the plaintiff in error are: *Carey* v. *German Am. Ins. Co.,* 84 Wis. 80, 54 N. W. 18, 20 L. R. A. 267, 36 Am. St. Rep. 907; *Burr* v. *German Am. Ins. Co.,* 84 Wis. 76, 54 N. W. 22, 36 Am. St. Rep. 905; and *Dover Glass Works* v. *Am. Fire Ins. Co.,* 15 Del. (1 Maro.) 32, 29 A. 1039, 65 Am. St. 264. In the first two, the personal property insured was in the possession of the sheriff who made the levy at the time of the fire. In the latter it was conceded that if there had been a substantial compliance with the provisions of the policy the plaintiff was entitled to recover. The theory of the cases holding the policy void where there had been a levy of an execution on personal property insured seems to be that "such policies are issued with the risk attendant upon the personality of the insured as one of the elements considered in accepting or refusing the risk;" that the contract is one the

Western Assur. Co. *v.* Stone, 145 Va. 776. 799

Opinion.

parties had the right to make; and that the taking of possession under a levy is a change of possession within the terms of the policy, and *ipso facto* renders the policy void.

[7] In the instant case it is not necessary to go the full length of some of the cases quoted from. The property was in the same possession at the time of the fire as at the time of the issuance of the policy, the interest of the assured was the same, nothing done or suffered by the insured has increased the risk of the insurer, and the temporary possession of the sheriff for less than two hours in no way contributed to the loss. There has been a substantial compliance with the terms of the policy, and to permit a technical violation of a doubtful provision of the policy, in no way increasing the risk of the insurer, to defeat a recovery, would not accord with justice. The insurer has been simply required to make good the loss it was paid to carry.

The assignments of error on the rulings of the trial court in refusing instructions are fully covered by the foregoing discussion. Those relating to rulings on the admissibility of testimony need not be discussed, as we have conceded in our discussion, for the purposes of the case, that the sheriff did make a levy and take possession of the goods for a period not exceeding two hours. The check which was given the sheriff was refused payment and is still unpaid, but that is immaterial. It is conceded that "there is no evidence that the fire in this case was of any other than accidental origin," and the *fact of possession* by the insured at the time of the fire, and not how it was obtained, is the only material subject of inquiry.

We find no error in the judgment of the trial court and it is affirmed.

*Affirmed.*