ANNA KRIEG, PLAINTIFF-APPELLANT, v. THE PHOENIX INSURANCE COMPANY OF HARTFORD, CONNECTICUT, DEFENDANT-RESPONDENT.

ANNA KRIEG, PLAINTIFF-APPELLANT, v. THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, DEFENDANT-RESPONDENT.

Submitted October 25, 1935—Decided May 14, 1936.

468

470

For the appellant, *Edward Gaulkin.*

For the respondents, *Lum, Tamblyn & Fairlie.*

The opinion of the court was delivered by

PERSKIE, J. The questions requiring decision are, therefore, whether the renting of the house and furniture by the assured to Britto, constituted a change of possession prohibited by the alienation clause in the policies, or whether it was merely a permissible change of occupancy?

We have, what we believe to be, a well charted and defined course by which we are guided in the process of interpreting insurance contracts. It is based on certain established principles of law. The following are but a few of the many of these applicable principles:

1. The law will not make a better contract for the parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. *Kupfersmith* v. *Delaware Insurance Co.,* 84 *N. J. L.* 271, 275; 86 *Atl. Rep.* 399; *Marone* v. *Hartford Fire Insurance Co., supra.*

2. We enforce the contract in accordance with its plain provisions; as it is written. *Precipio* v. *Insurance Company of Pennsylvania,* 103 *N. J. L.* 589; 137 *Atl. Rep.* 549; *Vozne* v. *Springfield Fire, &c., Insurance Co.,* 115 *N. J. L.* 449, 451; 180 *Atl. Rep.* 852.

3. We liberally construe policies of insurance to uphold the contract, and conditions contained in them which create forfeitures are construed most strongly against the insurer and will never be extended beyond the strict words of the policy. *Baylor* v. *The State, &c., Assurance Co.,* 113 *N. J. L.* 389, 395; 174 *Atl. R' p.* 526.

4. We never seek for a construction of a forfeiture clause in a policy which will sustain it, if one which will defeat it is reasonably deducible from the terms and words used to express it. *Rockmiss* v. *New Jersey Manufacturers, &c., Co.,* 112 *N. J. L.* 136, 140; 169 *Atl. Rep.* 663.

5. We consider the entire policy in all its parts to the end

that each clause shall have the same effect. *Smith* v. *Fidelity and Deposit Co.*, 98 *N. J. L.* 534, 536; 120 *Atl. Rep.* 322.

6. We hold even in contracts of insurance written on our standard form of policy, that the maxim, *Verba Chartarum accipiuntur contra proferentum*, has no *special* application. *Precipio* v. *Insurance Company of Pennsylvania, supra.*

7. We consider facts or conditions imposed in a policy inconsistent with, or a waiver of, any of the provisions or conditions of the standard form of policy as a nullity; and where the conditions of the issued policy and the provisions of the standard form of policy, relating to forfeitures, create an ambiguity, we adopt a construction which will avoid a forfeiture. *Corlies* v. *Westchester Fire Insurance Co., supra.*

*First:* Do not the tenancy privileges, both under the instant policies and under our standard form of policy, clearly indicate that occupancy by a tenant is permissible? Respondents answer the question by saying that, assuming that the answer is in the affirmative, the permissible occupancy of the tenant is limited solely to realty. Appellant denies the accuracy of this answer. What is the applicable law? There is no concord of authority on this point. It has been held that the permissible change of occupancy is not so limited. *Herman Bros.* v. *Katz* (1897), 101 *Tenn.* 118; 41 *L. R. A.* 700; 47 *S. W. Rep.* 86. And it has also been held that it is so limited. Compare cases cited and analyzed in *Western Assurance Co.* v. *Stone* (*Va.*, 1926), 134 *S. E. Rep.* 710; 48 *A. L. R.* 1009, 1020.

We cannot be unmindful of the fact that, under our ever changing and increasing conveniences in living conditions, there are many furnished homes and apartments leased by owners to tenants. Some are leased for seasonal periods during the year and others are leased for longer periods. If an assured is given privilege, within the terms of his policy of insurance, of permitting a tenant to occupy a building which is not furnished why deny him the same right simply because the rented building is furnished? If it is permissible, and it is conceded to be so, under the one circumstance, it is likewise permissible under the other circumstance. There is noth-

ing based on right, reason or law for a distinction in either. event. We hold that the change of occupancy, under the proofs here exhibited, is applicable to personalty as well as to realty.

*Second:* Under the plain wording of the standard form of policy, forfeitures, on the ground of increased hazard, can only follow when it is shown that the situation was within the control or knowledge of the assured, or upon circumstances which, by the exercise of ordinary care and diligence, would result in such knowledge. It is conceded that the assured was not charged with such knowledge. We, therefore, concur in the view adopted by the trial judge that the policies were not forfeited by reason of the increased hazard provisions thereof. Section 253, *Richards on the Law of Insurance* (*4th ed.*) 403; 26 *C. J.* 221, § 268; compare, *Patriotic Insurance Co.* v. *Franciscus, 55 Fed. Rep.* (*2d*) 844, 847, and cases therein cited; see *Knight* v. *Boston Insurance Co.,* 113 *N. J. L.* 132; 172 *Atl. Rep.* 905.

*Third:* Having determined that a change of occupancy was permissible, we next approach the consideration and determination of the question, whether that change (leasing of furnished house to Britto), constituted a change of possession prohibited under the alienation clause of the policies? Here we again strike divergent opinion. There is respectable authority supporting each side of the question. "* * * The occupancy of insured premises by a lessee under a lease made subsequent to the issuance of the policy is not such a change of possession as is contemplated by the condition * * *." 26 *C. J.* 242, § 306. "A lease of the insured property is not a violation of a stipulation avoiding the policy in case of alienation or change of title or interest * * *." 26 *C. J.* 235, § 288. Compare 14 *R. C. L.* 1129, § 307; see exhaustive review of the cases (*pro* and *con*) on the subject in *Western Assurance Co.* v. *Stone, supra.*

It may well be conceded that the object of the clause is to guard against indifference on the part of the assured in the care of his property. *Commercial Union Assurance Co.* v. *Scammon, 126 Ill.* 355; 9 *Am. St. Rep.* 607; 18 *N. E. Rep.*

526. It is to avoid possible carelessness. *Bowling* v. *Continental Insurance Co.*, 86 *W. Va.* 164; 17 *A. L. R.* 376; 103 *S. E. Rep.* 285. But not every change of possession is prohibited. The instant policies specifically exempt a change which occurs as the result of death of the assured, and also a "change of occupants without increase of hazard."

A construction avoiding a forfeiture is deducible from the words used to express it. It has been so construed. The word "possession" as used with "* * * the words 'interest' and 'title' seem to mean legal possession or possessory right * * *." Except for the physical occupancy of the premises, which is not forbidden under the policies, there was no change of possession. *Marcello* v. *Concordia Fire Insurance Co.* (1912), 234 *Pa.* 31; 81 *Atl. Rep.* 1090; 39 *L. R. A. (N. S.)* 366, 368; *Western Assurance Co.* v. *Slone, supra.*

We do not share the view adopted by the court below that the letting of the dwelling and furniture constituted a change of possession prohibited by the alienation clause under the policies. We hold to the contrary. The result of what has been written leads, obviously, to a reversal.

*Fourth:* We do not desire to prolong this opinion with a discussion of the legal efficacy of the description in the rider to the policies as to use and occupation. We express no opinion thereon. Since this case may be retried, it is perhaps not out of place to observe that the stipulation discloses, *inter alia,* "that the police dismantled the still and removed it from the premises." The process "of dismantling and removing began about nine A. M. and was completed four forty-five P. M. on November 13th, 1930." The fire, however, did not happen until "about nine-thirty P. M." of the same day. Under those circumstances it may well be that the fire occurred when the non-dwelling house user of the premises and furniture had ceased, or when the premises were permitted to become, or had, in fact, become vacant or unoccupied. Compare *Ring* v. *Phoenix Assurance Co.*, 145 *Mass.* 426; 14 *N. E. Rep.* 525.

We deem it unnecessary to now make any further comment on any of the other points argued.

Judgment is reversed.

*For affirmance*—THE CHIEF JUSTICE, CASE, HETFIELD, JJ. 3.

*For reversal*—THE CHANCELLOR, LLOYD, BODINE, DONGES, HEHER, PERSKIE, DEAR, WOLFSKEIL, RAFFERTY, JJ. 9.